41072, 41073.  BROOME v. MARTIN; and vice versa.

DECIDED JANUARY 25, 1965.

54

*Davis & Stringer, Thomas O. Davis, Zachary & Hunter, John C. Hunter, Casper Rich,* for plaintiff in error.

*Edenfield, Heyman & Sizemore, Newell Edenfield, W. Dan Greer, Paul L. Lindsey, Jr., Carl T. Hudgins,* contra.

EBERHARDT, Judge. ■ The grounds upon which a primary or election may be contested are specified in *Code Ann.* § 34-1703 as being any one or more of the following:

"(a)  Malconduct, fraud or irregularity by any primary or election official or officials sufficient to change or place in doubt the result;

"(b)  When the defendant is ineligible for the nomination or office in dispute;

"(c)  When illegal votes have been received or legal votes rejected at the polls sufficient to change or place in doubt the result;

"(d)  For any error in counting the votes or declaring the result of the primary or election, if such error would change the result;

"(e)  For any other cause which shows that another was the person legally nominated, elected or eligible to compete in a run-off primary or election."

In § 34-1708 (c) it is provided: "If misconduct is complained of on the part of the poll officers of any election district, it shall not be held sufficient to set aside the contested result unless the rejection of the vote of such district would change such result."

We should observe at the outset that no fraud or fraudulent conduct was charged in contestant's petition against any primary official or poll worker, and none was shown by the evidence upon trial of the contest. It was simply charged that certain irregularities occurred in the conduct of the election that were sufficient to change the result. The trial judge having resolved the factual issues against contestant, we must affirm if there is any evidence in the record to support his findings. *Balkcom v. Vickers,* 220 Ga. 345, 348 (138 SE2d 868).

Contestant sought to have all of the ballots cast in Edgewood B district disregarded because the poll officials failed to open the ballot box and count the ballots immediately upon closing the polls and before taking them to the tabulation center, and failure likewise to count the stubs and determine whether the number of stubs corresponded with the number of ballots cast. The trial judge found from the evidence that these irregularities did occur, but further found that they were not calculated to and did not change the result. With this finding we agree. The

official in charge of Edgewood B district testified that immediately upon closing the polls the ballot box and the stub box were sealed and carried to the tabulation center. Upon arrival there it was learned that the ballots and stubs should have been counted, and by direction of the election superintendent they were carried into a room at the center, opened and counted. There was no evidence that a single ballot was changed or that any were added or taken away. While the purpose of the provision for opening and counting the ballots at the polls is to guard against any change in the ballots or in the number of ballots to be counted in determining the result, thus protecting the sanctity of the election process, which is a very important provision of the Code requirements, yet if it does not appear that failure of the poll officials to perform that duty in some manner changed the result, the election should not be set aside merely because of the irregularity. Indeed the court is not authorized, absent that showing, to set the election aside. *Code Ann.* § 34-1708 (c). *Hastings v. Wilson,* 181 Ga. 305, 307 (182 SE 375); *State v. Carswell,* 78 Ga. App. 84, 88 (2) (50 SE2d 621).

True enough, a disregarding of all the ballots cast in Edgewood B district would change the result, since Martin's margin in that district was in excess of five votes, but we do not, as the trial judge did not, regard the irregularities as being of the character that could or did change the result or even to place it in doubt. Refusal to disregard the vote of the whole district was proper.

The claim that electors were required to exhibit their ballots to poll workers before placing them in the box must likewise fail. Not only is there failure of any evidence to show that this irregularity, if true, was sufficient to change the result, but the evidence is lacking in sustaining the claim. It was no more than conjecture on the part of one elector who, admitting that the worker did not see the face of his own ballot, surmised that it may have been the case with others. We do not imply that poll workers act with propriety if they do require electors to exhibit the ballot in a manner that would enable them to determine how or for whom the ballots were being cast. Certainly that is improper, and refusal of electors so to exhibit the ballot is entirely proper. The trial judge was authorized to find, as

is implicit in his findings and judgment, that this claim of irregularity was not sustained.

The counting of one ballot for Martin that was found on the day following the primary in the stub box rather than the ballot box was improper if it was placed in the stub box by the elector, for in that event the elector was responsible for the failure to complete the voting process in a manner contemplated by law. But if the ballot was deposited in the stub box by a poll worker through error or inadvertence the situation was otherwise. It is not infrequent that an elector hands his ballot to the poll worker at the box and the worker deposits it. There was no evidence as to who may have deposited this ballot for Martin in the stub box, or how it may have gotten there. It may have occurred at the time of the opening of the boxes and the counting of the ballots and stubs the night before, and if it did we certainly would not disfranchise the elector for that. In the absence of any evidence as to how it may have occurred, however, it is to be presumed that the elector did it and thus it should have been disregarded or thrown out. But the doing of that would effect no change in the result.

The claim that some 229 ballots were altered must fail. Since it appeared that all save 29 were duplicated for processing, as authorized by *Code Ann.* § 34-1504e (iii), and that the poll workers prepared these for processing by flicking from them the scored squares which electors had failed to punch completely from the ballot—using the fingernail—it is apparent that nothing was done as to these that effected any change in the result. These were ballots rejected by the computer. They were submitted to the assistant managers or to the manager of the election for decision as to whether the elector had intended to punch the square completely out and thus to vote, and how they were to be counted, as is authorized by *Code Ann.* § 34-1323. Those who were authorized to do so made the decisions and the ministerial acts of the workers in complying by flicking the scored squares away so the ballots would be processable effected no change in the votes as cast by the electors. It would have been better if all ballots defective for any reason or to any extent and thus not processable in the computer had been duplicated

and the duplicates processed in the manner contemplated by *Code Ann.* § 34-1504. If the evidence had indicated any fraud in this matter a different conclusion might have been reached.

Certainly the claim of alteration as to the 181 ballots on which the poll workers erroneously placed numbers in the space at the bottom where the legend "Write In No._____" appeared could not affect the result, since these votes were not counted and since it appears that a majority of them were cast for Martin. But for reasons stated in our discussion of the cross bill we do not deem this claim of alteration to warrant the disregarding of those ballots.

*The Cross bill.* It appears that the alleged rule of the Democratic Party conflicts with provisions of the Georgia Election Code and must yield. The plea in bar was properly overruled.

The trial judge expressed doubt that the 181 ballots on which the workers had placed numbers should have been thrown out, though he found it unnecessary to make a definite ruling since inclusion of these votes would only increase the margin of Martin's majority. In view of the circumstances under which these ballots were numbered, this being the first experience of the poll workers with the votomatic process, and since the electors voting those ballots were wholly without fault in the matter we are convinced that they should have been processed, counted and included in the totals. See *Houser v. Hartley,* 157 Ga. 137, 145 (120 SE 622). It is clear that the numbers were not placed on the ballots for any use in identifying them with the electors so that it could be determined how or for whom they had voted, and it is equally clear that it did not in any wise affect the manner in which the ballots were punched for voting or to any extent change the result. Alteration which voids a ballot is that which changes its meaning.

The finding of the trial judge that the irregularities in the conduct of the election were occasioned by inexperience of the primary officials under the new election code and by their lack, in some instances, of a thorough knowledge of its provisions was fully authorized by the evidence. We agree with him that there was a faithful and conscientious endeavor on the part of the officials and poll workers to act in accordance with the re-

quirements of law. His conclusion that the irregularities shown did not in any way affect the result was proper. While he did not use the expression in his findings and judgment it is implicit that he found nothing that placed the result in doubt, and with that we agree. No irregularity pleaded or proven was sufficient, under the facts of this case, to change or cast doubt upon the result.

*Judgment affirmed with direction that the 181 ballots which were disregarded be processed and included in the totals, and that the ballot found in the stub box be not included in the totals. Nichols, P. J., and Pannell, J., concur.*