46328, 46329.   NOBLES v. OSBORNE; and vice versa.

ARGUED JUNE 30, 1971—DECIDED SEPTEMBER 8, 1971—
REHEARING DENIED SEPTEMBER 21, 1971—

*Hitch, Miller, Beckmann & Simpson, Martin Kent,* for appellant.
*R. L. Dawson, Richard Phillips,* for appellee.

*Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, Robert J. Castellani, Assistant Attorney General,* amicus curiae.

HALL, Presiding Judge. At issue here is the interpretation of the Georgia Municipal Election Code relating to an absentee ballot deposited with the stub still attached. Unfortunately, while overwhelmingly specific on most procedures, the Code is silent on the crucial point here: When and by whom does the stub on an absentee ballot get removed? To arrive at an answer, we must extrapolate and interpolate from several sections and call upon some general principles from prior case law.

The form of a ballot is spelled out in the Code and clearly requires consecutively numbered, detachable stubs which say "Tear off before depositing ballot in ballot box." *Code Ann.* § 34A-1006. Absentee voting is covered separately in Chapter 13, but except for requiring that absentee ballots be marked as such, the section on form merely states they shall be in substantially the same form as set out in Chapter 34A-10. *Code Ann.* § 34A-1305.

*Code Ann.* 34A-12 deals with the conduct of elections. The most important provisions pertaining to this case are: "Before leaving the voting compartment, the elector shall fold his ballot, without displaying the markings thereon, in the same way it was folded when received by him, and he shall then leave the compartment and exhibit the numbered strip to a poll officer who shall ascertain by an inspection of the number appearing thereon whether the ballot so exhibited to him is the same ballot which the elector received before entering the voting compartment. If it is the same, the poll officer shall direct the elector without unfolding the ballot, to remove the perforated portion containing the number, and the elector shall immediately deposit the ballot in the ballot box. The number strip shall be deposited in the stub box provided for such purpose, and the number strips shall be retained with the ballots and other stubs. If the ballot is marked 'Challenged,' the numbered perforated portion shall not be removed and the ballot shall be deposited with it attached. Any ballot, other than one marked 'Challenged,' deposited in a ballot box at any primary or election without having such number removed shall be void and shall not be counted." *Code Ann.* § 34A-1219 (d).

"Any ballot marked so as to identify the voter shall be void and not counted, except a ballot cast by a challenged elector whose name appears on the electors' list; such challenged vote shall be

counted as prima facie valid but may be voided in the event of an election contest." *Code Ann.* § 34A-1223 (a). The reason for these provisions is absolutely clear. The stub identifies the voter and violates the most basic principle of the secret ballot. Though there is no Georgia case law directly on point, the general rule is that anything on a ballot which would identify the elector would render it void. See 29 CJS, Elections, §§ 183-185.

It should also be noted that the chapter on absentee voting does not duplicate other general provisions of the Georgia Municipal Election Code but only covers those special procedures pertaining to absentee voting. Therefore it is easy to see how the gap in the law came about. The form for absentee ballots is prescribed only by reference to the more general section on form. Therefore these ballots have stubs—which are totally unnecessary since the ballots must be sent in a special outside envelope printed with a jurat containing the name of the elector. In case of challenge, the elector could later be identified (which is the whole purpose of the stub of a personally voted elector).

Therefore, while it was not incorrect to print and send out absentee ballots with stubs, the strong language of §§ 34A-1223 (a) and 34A-1219 (d) makes it clear that unless the stubs are removed, the ballots are void. [1]

Appellees contend it was the duty of the poll officers to remove the stubs when the envelopes where opened, but that this failure on the part of an official should not disenfranchise all those innocent voters. They cite two Georgia cases in support of this proposition. In *Broom v. Martin,* 111 Ga. App. 51 (140 SE2d 500), this court directed that certain marked ballots be counted. These ballots had been erroneously numbered by several poll workers, each beginning with #1, due to a misunderstanding of a legend on the ballot concerning write-in votes. However, the court stressed, "It is clear that the numbers were not placed on the ballots for any use

---

[1] It is of interest that in 1970, the legislature amended Title 34 (General Elections) so that absentee ballots must be printed without a number strip. *Code Ann.* § 34-1104 (b). However, no similar amendment was made to Title 34A; and even if it had been, the election here took place in 1969.

in identifying them with the electors so that it could be determined how or for whom they had voted, and it is equally clear that it did not . . . to any extent change the result." *Broom v. Martin,* supra, p. 58. Both of these factors are directly opposite in this case.

In *Blackburn v. Hall,* 115 Ga. App. 235 (154 SE2d 392), the court indeed stated the appellees' contention, but with important qualification, " . . . there is a distinction between the errors of officers conducting elections and errors of the voters themselves; in the former case, since the voter has no power over the officer, the officer's blunder will not disfranchise the voter—unless it is mandatory under the law, whereas the voter may *by his own neglect* disfranchise himself." *Blackburn v. Hall,* supra, p. 240.

The general provisions of the GMEC govern aspects of absentee voting not specifically covered in that chapter or in direct conflict with it. *Code Ann.* § 34A-1219 (d) places a duty on a poll officer to inspect the stub to be sure the ballot deposited is the same one issued to the voter. This is, again, superfluous in absentee ballots because of the jurat, and can be disregarded. The section also requires that the poll officer *direct the voter* to remove the stub from the ballot and deposit each in separate boxes. It is therefore the voter's job to remove the stub, not that of any official. While it could be argued that such directions should have been given by mail to absentee applicants, the voters had ballots clearly marked "Tear off before depositing ballot in ballot box"; their mailing in of the ballot was tantamount to depositing in a box; and they should be presumed to know that a numbered stub is a means of identifying one's own ballot. We therefore believe that here the absentee voters disenfranchised themselves by their own neglect. In a personally voted election, a ballot with a stub would simply not be counted under the clear mandate of § 34A-1223 (a). There would be no great inquiry to ascertain whether the poll officer simply failed to give directions, or whether he was momentarily away from his post, etc.

We believe the Louisiana Court of Appeals answered this issue with sound reasoning. "We can think of no more infallible manner of identifying a ballot than the casting of one with a number attached thereto. While such a ballot may not necessarily have been

cast with fraudulent intent or in bad faith, nevertheless, each elector is presumed to know the law renders invalid an identifiable ballot. . . The decision in the Jarreau case [Jarreau v. David (La. App.) 74 S. 2d 218] makes it clear that the voters therein in no way participated in the action which rendered the ballot invalid. However, a voter who casts a ballot with a numbered slip attached thereto is not in the same position; It is his own action, albeit innocently, that makes his vote identifiable and destroys its secrecy." Cusimano v. O'Niell, 192 S. 2d 147, 152.

The Attorney General, who participated as amicus curiae in this appeal, has cogently pointed out that in a municipal election, involving a relatively small number of voters in close geographical proximity, the strictest maintenance of a secret ballot is necessary since social, financial and other pressures can be so easily brought to bear.

We therefore conclude the court erred in directing that these ballots be counted.

The cross appeal must be dismissed as the enumeration of errors was not filed within the required time.

*Judgment reversed. Eberhardt, J., concurs. Whitman, J., concurs in the judgment.*