HASTINGS *v.* WILSON, Secretary of State.

No. 10900. OCTOBER 16, 1935.

*Carpenter & Ellis,* for plaintiff. *Alston, Alston, Foster & Moise,* as amici curiæ.

*M. J. Yeomans, attorney-general, George L. Goode* and *B. D. Murphy, assistant attorneys-general,* for defendant.

HUTCHESON, Justice. At a State referendum election held on May 15, 1935, by authority of an act of the General Assembly of Georgia, there was submitted to popular vote the question of prohibition repeal. That act (Ga. L. 1935, p. 327) provided: "The returns of said election shall be certified to the Secretary of State within three days after said election, and the Secretary of State shall immediately certify the number of votes 'For Repeal' and the number of votes 'Against Repeal' to the Governor. If a majority of those voting at said election vote 'For Repeal,' the State voting as a whole, the Governor shall by proclamation declare this act ratified by the people of the State of Georgia, and when so ratified, notwithstanding the result for the entire State shall be for repeal, it shall be then permissible for the several counties of the State to hold the elections provided for in section 22 of this act. If the State shall vote 'Against Repeal,' the Governor shall declare this act not ratified, and no further or other election shall be necessary in the several counties of this State." W. G. Hastings

brought a petition for mandamus against John B. Wilson, the Secretary of State, seeking to compel him to certify to the Governor the result of such election. The petition was based on the following facts: All of the 159 counties in Georgia, except three, forwarded returns of the election within three days. These three counties did not certify their returns within the three days; and the result from the 156 counties was in favor of repeal. The petition seeks to require the Secretary of State to certify to the Governor the result of the election as shown by the returns from the State, after omitting the returns from the three counties which were certified after the three-day period. Up to midnight of May 18, 1935, three days after the election, the Secretary of State had received returns from 156 counties, showing a total of 81,324 votes "For Repeal" and 81,049 votes "Against Repeal." On the following Monday, May 20, the Secretary of State received returns from Heard County, Talbot County, and Bryan County, which he included in his tabulations, and certified to the Governor that the result of the election was 81,891 votes "For Repeal" and 82,134 votes "Against Repeal." Petitioner prayed for the writ of mandamus to require the Secretary of State to certify said result as of the expiration of the three-day period. The judge passed the following order: "I am of the opinion that the legislature did not intend that the Secretary of State should certify to the Governor the results of last Wednesday's election upon incomplete returns. That is true notwithstanding the provision that the returns of the election should be made to the Secretary of State within three days after the election. That provision was merely directory; and complete returns not having been made within three days after the election, the Secretary of State acted within the province of the law in basing his certificate to the Governor upon the complete returns. Therefore I am of the opinion that there is no merit in the within petition, and for that reason I decline to permit it to be filed." To this order the plaintiff excepted.

It is necessary that we consider what is a "directory" provision and what is a "mandatory" provision of our election laws, and for this purpose we think it not amiss to consider not only our own statutes and rulings but also the rulings of courts of other jurisdictions. The Code of 1933, § 34-3101, provides as follows: "No election shall be defeated for non-compliance with the re-

quirements of the law, if held at the proper time and place by persons qualified to hold it, unless it is shown that by such non-compliance the result is different from what would have been had there been proper compliance." In Webre v. Wilton, 29 La. Ann. 610, it was said that "a failure to return the result of a certain poll within the time prescribed by law does not of itself authorize the rejection of the votes of that poll." In Varney v. Justice, 86 Ky. 596, it is held that "a statute is to be regarded as directory merely if the directions given to accomplish a particular end may be violated, and yet the given end be in fact accomplished, and the merits of the case unaffected; and this rule is applied where the statute gives directions as to the manner of holding elections." This was followed in Anderson v. Winfree, 85 Ky. 597 (5), where it was said: "Where the statute simply provides that certain acts or things shall be done within a particular time or in a particular manner, and does not declare that the performance is essential to the validity of the election, they will be regarded as merely directory unless they affect the actual merits of the election." Again, in Laird v. Boothe, 22 Cal. App. 569, it was held, that, "to upset an election because the election officers have failed to strictly comply with the law, where it appears that no harm has been done thereby, would be to encourage irregularities committed for the very purpose of invalidating elections." We refer also to Horsefall v. Salem, 143 Mo. App. 541 (4) (128 S. W. 33), and quote therefrom the following forceful language: "If the statute merely provides that certain things shall be done, and does not prescribe what results shall follow if these things are not done, then the provision is directory merely, and the final test of the legality of either the election or the ballot is whether or not the voters have been given an opportunity to express and have fairly expressed their will." In Norman v. Indiana, 51 Ind. App. 425 (99 N. E. 812), it was said: "Where an election has been fairly and honestly conducted, it will not thereafter be invalidated by mere irregularities which are not shown to have affected the result. All provisions of the election laws are mandatory if enforcement is sought before election in a direct proceeding for that purpose; but after election they should be held directory only, in support of the result, unless of a character to obstruct the free and intelligent casting of the vote, or the ascertainment of the result, or unless

the provisions affect an essential element of the election, or unless it is expressly declared by the statute that the particular act is essential to the validity of an election, or that its omission shall render it void."

We have quoted these rulings from other States for the purpose of showing that the purity of elections and their freedom from fraud will always be safeguarded by the courts. In *Coleman* v. *Board of Education,* 131 *Ga.* 643, the following appears: "In Gilleland *v.* Schuyler, 9 Kans. 569 (8), it was said that 'Mere irregularities on the part of election officers, or their omission to observe some merely directory provision of the law, will not vitiate the election.' In the opinion that distinguished jurist, Judge Brewer, who was then a member of the Supreme Court of Kansas, said 'Questions affecting the purity of elections are in this country of vital importance. Upon them hangs the experiment of self-government. The problem is to secure first to the voter a free, untrammelled vote; and secondly, a correct record and return of the vote. It is mainly with reference to these two results that the rules for conducting elections are prescribed by the legislative power. But these rules are only means. The end is the freedom and purity of the election. To hold these rules all mandatory, and essential to a valid election, is to subordinate substance to form, the end to the means. Yet, on the other hand, to permit a total neglect of all the requirements of the statute, and still sustain the proceedings, is to forego the lessons of experience and invite a disregard of all those provisions which the wisdom of years has found conducive to the purity of the ballot box. Ignorance, inadvertence, mistake, or even intentional wrong on the part of local officials, should not be permitted to disfranchise a district. Yet rules, uniformity of procedure, are as essential to secure truth and exactness in elections as in anything else. Irregularities invite and conceal fraud.' He also stated that 'Unless a fair consideration of the statute shows that the legislature intended compliance with the provision in relation to the manner to be essential to the validity of the proceedings, it is to be regarded as directory merely.'" We do not believe the rule relative to this matter can be better stated than as found in Clark *v.* Hardison, 40 Tex. Civ. App. 611 (90 S. W. 342) : "A failure to observe the directory provisions of the election law will not, in the absence of

fraud, nullify an election which shows a fair and honest expression of the elector's will."

The order denying the mandamus nisi succinctly states the reasons for such denial, and is based on sound principles of law. It would be going too far to say that the General Assembly had even a remote intention of having section 36 of the act in question construed as is sought in the petition before us. The court did not err in refusing to entertain the petition to compel the Secretary of State to certify returns of such election without including the returns from the three counties which were not made to him within the period of three days as provided by statute.

*Judgment affirmed. All the Justices concur, except Russell, C. J., and Atkinson, J., who dissent.*

RUSSELL, Chief Justice, dissenting. The question before the court is based upon the refusal of the trial judge to permit an application for mandamus to be filed. The order of the judge which is quoted in the opinion of the majority consists of two parts: (1) the reasons which impelled the court to reach the conclusion, and (2) the judgment of the court. The judgment, dissociated from the judge's statement of his reasons, is: "Therefore I am of the opinion that there is no merit in the within petition, and for that reason I decline to permit it to be filed." The act makes the Governor the final supervisor of the election. The writer is far from having any intention of personally criticising the action of the chief executive, and in my point of view of the separate identity and absolute independence of each of the three departments of government— legislative, executive, and judicial, I think it would be judicially unpardonable were I to cavil with or criticise the action of the Governor in the present instance. Upon several legal principles I dissent from the view that the judgment declining to grant a mandamus nisi is correct. I am unwilling as a member of this court, entertaining equal respect for the General Assembly (as the constitutional legislative branch of the State) to have the plain language used by the legislature distorted and construed out of existence. The act says: "The returns *shall be certified* to the Secretary of State within three days after said election." The majority of the court construe the word "shall" as "may." The returns may be certified within three days after said election, but they may not be certified within, say, thirty days, or not at all. If it is alto-

gether a matter of discretion with the Secretary of State, who shall say how long the Secretary of State may not, within the exercise of his discretion, withhold returns that have been sent him? I think the legislature had a purpose in using the mandatory term "shall." The only result of failure to comply with the law would be to deprive a county which failed to send in its return of the privilege of voting on the question submitted. On the contrary, to have an unlimited time for fixing the returns after the casting of the vote would at least expose partisans on either side of the contest to the temptation of throwing out enough votes or putting in enough votes to alter the result. The General Assembly intended that the word "shall" should have its ordinary significance, which permits of no construction and is satisfied only by obedience. The General Assembly seems to be familiar with the customary and ordinary meaning of "shall" as mandatory. The word is used twelve times in section 36 of the act, which provides: "The voters list used in such election shall be the registered list used in the last general election." Construe this "shall" as "may," and the prevailing parties to the issue to be voted on in a county could hold that provision of the act to be merely directory, and to prepare another and a different list, for reasons which might appear to be for the purification of the ballot or for other good reason.

The court erred in refusing to allow the petition for mandamus to be filed, before the Governor acted. When filed, it would have become a matter for judicial procedure. Mr. Justice Atkinson concurs in this dissent.