## S04A2128. BANKER v. COLE et al.
(604 SE2d 165)

BENHAM, Justice.

This appeal is from a judgment denying Banker's challenge of the results of the Republican General Primary for the office of Chief Magistrate of Forsyth County. In the election, Cole received 7,448 votes, Banker received 6,398 votes, and 1,817 votes were cast for Adams, who withdrew from the race on June 30, 2004, after ballots had been printed and absentee voting and early voting had begun.

Pursuant to the provisions of OCGA § 21-2-134 (a) (2),[1] which govern the procedure for withdrawal of candidates in primary elections, appellee Smith, Forsyth County Election Superintendent, caused notice of Adams's withdrawal to be posted in polling places. The notices measured three inches by four and one-half inches and stated Adams had withdrawn, but did not contain the notice set forth in the statute that "all votes cast for such withdrawn candidate shall be void and shall not be counted." In her challenge, Banker contended the notices were not prominent and were legally insufficient because they omitted the information that votes for Adams would be void and would not be counted. The trial court found prominence was adequately proved and the wording of the notice constituted substantial compliance with the statutory requirements, and ruled Banker had not shown any irregularity affecting a sufficient number of votes to place the result in doubt.

1. OCGA § 21-2-134 (a) (2) requires notices of withdrawal of a candidate be "prominent," which means "[s]tanding out so as to catch the attention; conspicuous. . . ." The New Shorter Oxford English Dictionary, 1993, p. 2375. Whether the notices appellee Smith caused to be posted were prominent was a contested issue before the trial court. Banker put on witnesses who testified they had not known of Adams's withdrawal and did not see the notices, and witnesses who testified they knew of the withdrawal and looked for notices but did not see them. Smith testified he had started with larger notices at the early voting location, but decided after receiving feedback from voters that smaller notices could be placed in places where voters would be more likely to see them, such as on top of the card readers into which each voter had to insert a card to begin voting. Although the notices were of a size to fit the top of the card readers, Smith did not require that specific placement, but because the circumstances at various polling places varied, told poll managers to put the notices where the

---

[1] "Prominent notices shall be posted in all polling places in which the name of the withdrawn candidate appears on the ballot stating that the candidate has withdrawn and that all votes cast for such withdrawn candidate shall be void and shall not be counted." OCGA § 21-2-134 (a) (2).

voters would see them. Poll managers testified they placed the notices on the card readers, put additional notices at places where voters had to go, such as on the sign-in table and on the wall near sample ballots, and made verbal announcements to voters as they entered the polling place.

"[A] trial court's findings in an election contest will not be disturbed unless clearly erroneous." *Streeter v. Paschal*, 267 Ga. 207 (1) (476 SE2d 759) (1996). Since there was evidence presented to the trial court that the notices were made conspicuous by their placement, the trial court's finding that the notices met the statutory standard of being "prominent" was not clearly erroneous and must be upheld.

2. Regarding the content of the notices posted in the polling places, the trial court found substantial compliance with the requirements of OCGA § 21-2-134 (a) (2). Banker contends the trial court erred in applying a substantial compliance standard rather than a strict compliance standard. We disagree.

"[W]here the election is held in substantial compliance with the law, it should not be rendered void merely because of isolated failures to conform strictly with the law unless it appears that such failures changed the results of the election." *Gay v. Clements*, 214 Ga. 136 (2) (103 SE2d 553) (1958). See also *Hastings v. Wilson*, 181 Ga. 305, 306-307 (182 SE 375) (1935).

3. Having concluded that substantial compliance is the applicable standard, the second question is whether the notices, as posted, substantially complied with the requirements of OCGA § 21-2-134 (a) (2). To address that issue, we must first consider what is meant by "substantial compliance."

> Substantial compliance does not require that the language should be exactly as prescribed by the statute but that all the essential requirements of the form be prescribed. When there is actual compliance as to all matters of substance then mere technicalities of form or variations in the mode of expression should not be given the stature of noncompliance.

*General Elec. Credit Corp. v. Brooks*, 242 Ga. 109, 118-119 (249 SE2d 596) (1978).

OCGA § 21-2-134 (a) (2) sets forth the notification required to be given to voters when the ballot is not reprinted following the withdrawal of a candidate in a primary election: "Prominent notices shall be posted in all polling places in which the name of the withdrawn candidate appears on the ballot stating that the candidate has withdrawn and that all votes cast for such withdrawn candidate shall be void and shall not be counted." Since substantial compliance, as

noted above, consists of meeting the essential requirements, the next step in resolving this matter is to identify the essential requirements regarding the content of the notice. The fact of the candidate's withdrawal is obviously essential since that is the central fact triggering the need for the notice. The trial court stated in its order "that there should be no confusion as to the meaning of 'withdrawal,' " and we agree. That does not, however, conclude the inquiry. While the fact of the withdrawal is readily understood, the legal impact of the withdrawal is not necessarily so apparent to voters. For instance, without being informed that votes for a withdrawn candidate will be void and will not be counted at all, voters may not understand that such votes will have an undesired effect such as reducing the number of votes cast in the election, thereby affecting the number of votes necessary for a candidate in a primary to avoid a runoff election. Without awareness of the legal effect of voting for a withdrawn candidate, voters might believe their votes would function as write-in votes, with the possibility of persuading the withdrawn candidate to take office if enough votes are cast for that candidate. Citizens who have gone to the trouble of making time to go to the polls to exercise their franchise and to perform their civic duty to participate in governance need to know that voting for a withdrawn candidate results in rendering their efforts, at least as to that one contest, entirely nugatory. Given the potential for confusion regarding the legal effect of casting a vote for a candidate who has withdrawn, we conclude both pieces of information set out in the statute, the fact of withdrawal and the legal effect of voting for a withdrawn candidate, must be included in the notice provided for in OCGA § 21-2-134 (a) (2).

Our conclusion in that regard is bolstered by consideration of the function of the notice. When a candidate withdraws from either a general election or a primary election after the ballots have been printed, OCGA § 21-2-134 (a) gives the person responsible for the election two options: reprint the ballot omitting the name of the withdrawn candidate or post a notice stating the candidate has withdrawn and votes for the withdrawn candidate will be void and will not be counted. If, as in this case, the withdrawal occurs so close to election day that reprinting the ballots is not a viable option, the ballot given to the voters is, in effect, an irregular ballot because it includes the name of a candidate who is no longer running for the office. In that event, the second option, the notice prescribed by OCGA § 21-2-134 (a), functions as a remedy for the irregular ballot. For that remedy to be effective, it must be complete, informing the electorate not only of the factual matter of the withdrawal of a candidate, but of the legal effect of voting for the withdrawn candidate.

Since both parts of the notice provided for in the statute are essential to avoid confusion and to function as a remedy for an

irregular ballot, substantial compliance with OCGA § 21-2-134 (a) requires both parts be included. The trial court's conclusion that the notice posted in this election was in substantial compliance with statutory requirements was error.

4. The trial court's error in concluding the notice of withdrawal was sufficient does not necessarily require reversal of its judgment. "It is presumed that election returns are valid, and the party contesting the election has the burden of showing an irregularity or illegality sufficient to change or place in doubt the result of the election." *Hunt v. Crawford*, 270 Ga. 7 (1) (507 SE2d 723) (1998). Thus, in addition to proving an irregularity, Banker bore the burden of proving the irregularity was sufficient to place in doubt the result of the election. Since the parties stipulated the difference between the votes cast for Banker and the votes cast for Cole was 1,050, Banker had the burden of showing at least 1,050 votes cast for Adams were affected by the irregularity in the notice of Adams's withdrawal. Banker asserts her burden was satisfied by the stipulation that 1,817 votes were cast for Adams. However, that assertion depends on the assumption that all the votes cast for Adams were affected by the irregularity in the notice of withdrawal, an assumption not supported by the evidence.

Appellee Smith, the county election superintendent, testified that early and absentee voting began on June 5, 2004, some 25 days before Adams withdrew, and approximately 800 absentee ballots were returned. The statute involved in this matter, OCGA § 21-2-134 (a) (2), provides the notice of withdrawal "shall be posted in all polling places in which the name of the withdrawn candidate appears on the ballot . . . ," but makes no reference to absentee ballots. Thus, as to absentee ballots, which by their very nature are not cast at polling places, the irregularity shown by Banker, improper posting of notice of withdrawal, does not exist. As noted above, the evidence also showed an unknown number of voters utilized the early voting process to cast ballots prior to Adams's withdrawal, ballots which would not be affected by the irregularity in giving notice of withdrawal.

Thus, of the 1,817 votes cast for Adams, only those cast after his withdrawal, i.e., on election day or in early voting after June 30, may be counted as having been affected by the irregularity in the notice of withdrawal. This case differs in that regard from our recent case of *Mead v. Sheffield*, 278 Ga. 268 (601 SE2d 99) (2004), which involved illegal ballots, all of which were to be discounted. Since Banker's evidence did not make the distinction between votes before and after Adams's withdrawal, she did not carry her burden of demonstrating an irregularity or illegality sufficient to change or place in doubt the result of the election. *Hunt v. Crawford*, supra.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 12, 2004 —
RECONSIDERATION DENIED OCTOBER 25, 2004.

*Balch & Bingham, Michael J. Bowers, J. Matthew Maguire, Jr.,* for appellant.
*Greene, Buckley, Jones & McQueen, John D. Jones, John E. Talmadge, Jarrard & Davis, Kenneth E. Jarrard, Angela E. Davis,* for appellees.