S05A0847. JONES v. JESSUP et al.
(615 SE2d 529)

HUNSTEIN, Justice.

Stephen Jessup was a candidate for Sheriff of McIntosh County in the November 2, 2004 general election. He lost to the incumbent, Charles "Chunk" Jones, by 36 votes. Jessup subsequently filed a petition to contest the election, asserting that there were sufficient irregularities to place in doubt the election results. At a hearing on the matter, Jessup introduced voluminous records from the county boards of electors and registrars and presented the testimony of 37 witnesses who had voted at the November 2, 2004 general election. The trial court, after recognizing that the evidence conclusively established that the voting irregularities were not the result of any intentional behavior by the county board of registrars, ruled that Jessup had carried his burden of showing that the election was not held in substantial compliance with the law and that the result of the election for the office of county sheriff had been placed in doubt so as to require the invalidation of the November 2, 2004 election for that position. The trial court ordered that a new election be held on April 19, 2005, subject to a determination by the court that the errors that caused the invalidity of the November 2004 election had been corrected. Jones timely appealed the trial court's order and this Court granted his motion to stay the second election scheduled for April 2005. Based on our review of the evidence adduced at the hearing, we find that the trial court committed factual and legal errors in its ruling. Accordingly, we reverse the order invalidating the November 2, 2004 election for Sheriff of McIntosh County.

" 'It is presumed that election returns are valid, and the party contesting the election has the burden of showing an irregularity or illegality sufficient to change or place in doubt the result of the

election.' [Cit.]" *Banker v. Cole*, 278 Ga. 532, 535 (4) (604 SE2d 165) (2004). In determining that 36 votes from the election had to be disregarded, the trial court combined six illegal ballots it found to exist, see *Mead v. Sheffield*, 278 Ga. 268 (601 SE2d 99) (2004), with substantial errors existing in the votes cast in the sheriff's race by 30 electors Jessup presented to the court. We need not address whether the trial court properly credited Jessup with the six illegal ballots because we find that Jessup failed to prove substantial error in the votes cast by 30 of those 37 witnesses adduced at the hearing who voted at the November 2, 2004 general election.

The record reflects that Jessup failed to establish that three of the witnesses cast votes in the sheriff's race.[1] Their votes thus cannot be used to invalidate the election. See *Mead*, supra, 278 Ga. at 270; see also id. at 274-275 (Hunstein, J., concurring specially) (burden on petitioner to show that a sufficient number of electors voted illegally in the contest being challenged to change or cast doubt on the election). Next, no error was shown to exist in the vote cast by witness Ophelia Grant.[2] Of the remaining 33 witnesses, all of whom had cast votes in the sheriff's race, Jessup's evidence did reflect the presence of some irregularity in their ballots. However, not every irregularity will invalidate an elector's vote. " '(W)here the election is held in substantial compliance with the law, it should not be rendered void merely because of isolated failures to conform strictly with the law unless it appears that such failures changed the results of the election.' [Cit.]" *Banker v. Cole*, supra, 278 Ga. at 533 (2).

As to three witnesses, the sole alleged irregularity related to these electors' failure to sign the application for an absentee ballot.[3] See OCGA § 21-2-381 (a) (1). However, testimony by the chief regis-trar established that these three electors had voted in person during the advance voting period and had provided positive identification to county personnel before casting their votes. Under these circum-stances we cannot agree that the failure to comply strictly with the provisions of OCGA § 21-2-381 warranted the rejection of these three electors' votes. See *Hastings v. Wilson*, 181 Ga. 305, 307 (182 SE 375) (1935) (" 'to upset an election because the election officers have failed to strictly comply with the law, where it appears that no harm has

---

[1] Those three are witnesses Leggett, Vereen and Ryals. We have not included in this category witness Merriman, who was accidentally allowed to vote twice by absentee ballot and who testified that he did not vote in the sheriff's race with his first ballot and did so only with his second ballot.

[2] It appears that Grant was confused with another McIntosh County elector who had the same first name. Because this other elector did not testify at the hearing, any irregularities regarding her vote are irrelevant in the absence of evidence to establish that she voted in the challenged sheriff's race. *Mead*, supra.

[3] Those three are witnesses Marshall, Stokes and Townsend.

been done thereby, would be to encourage irregularities committed for the very purpose of invalidating elections' ").

Similarly, the evidence showed that the sole error made in the votes cast by several other witnesses consisted of them misreading the oath of the elector on the outside envelope for their absentee ballots, see OCGA § 21-2-384 (b), so that they incorrectly wrote down the month and date they voted the absentee ballot rather than their month and date of birth, see id. at (c) (1); two of these witnesses also failed to write down their place of birth.[4] The form of the oath of elector in OCGA § 21-2-384 (c) (1) reflects that space is provided for date and place of birth information, but OCGA § 21-2-386 (a) (1) provides that an absentee ballot is to be rejected only where the elector "has failed to furnish required information."[5] It is uncontroverted that these witnesses otherwise properly fulfilled the statutory requirements, in that they each averred that they lived in McIntosh County, they provided their respective addresses and signed their names to the oath of elector. No evidence was adduced to indicate that the identifying information on these witnesses' oaths did not conform with the information on file for each elector. Because the ballots cast by these witnesses substantially complied with all of the essential requirements of the form, the trial court erred by finding that they should not have been considered. See *Banker*, supra, 278 Ga. at 533 (3) (applicable standard is substantial compliance with election law, not strict and literal compliance). See also *Hastings*, supra, 181 Ga. at 308-309 (failure to observe directory provisions of election statutes will not, in the absence of fraud, nullify an election that shows a fair and honest expression of the elector's will).

As detailed above, Jessup failed to establish substantial error in the votes cast by ten of the thirty-seven witnesses he adduced. The record thus establishes that the trial court clearly erred when it found

---

[4] Witness Hillis provided the wrong information on the date of birth line; witnesses Young and Mattie Gladstone provided the wrong information on the date of birth line and failed to provide their place of birth.

[5] Although failure to furnish required information is "a ground for rejection," 1974 Op. Atty. Gen. 54-110, 112 (3), OCGA § 21-2-386 does not mandate the automatic rejection of any absentee ballot lacking the elector's place and/or date of birth. As we stated in *Gwinnett County v. Bolin*, 262 Ga. 67, 69 (3) (b) (414 SE2d 225) (1992),

> Questions affecting the purity of elections are in this country of vital importance. Upon them hangs the experiment of self-government. The problem is to secure, first, to the voter a free, untrammeled vote; and secondly, a correct record and return of the vote. It is mainly with reference to these two results that the rules for conducting elections are prescribed by the legislative power. But these rules are only means. The end is the freedom and purity of the election. To hold these rules all mandatory, and essential to a vital election, is to subordinate substance to form, the end to the means.

(Citations and punctuation omitted.)

that Jessup presented 30 electors who failed to meet the essential statutory elements so as to carry his burden of showing the requisite irregularity or illegality sufficient to change or place in doubt the result of the election.[6] See generally *Banker*, supra. Accordingly, the trial court erred by invalidating the November 2, 2004 election for the position of Sheriff of McIntosh County.

*Judgment reversed. All the Justices concur.*

DECIDED JUNE 30, 2005.

*Savage, Turner, Pinson & Karsman, Robert B. Turner, Kathryn H. Pinckney*, for appellant.

*Adam S. Poppell III, Fletcher Farrington, Douglas W. Alexander*, for appellees.

---

[6] It is thus unnecessary for us to reach the propriety of the trial court's ruling regarding the substantive nature of the irregularities in the votes cast by the remaining 27 witnesses.