S10A1329. SCOGGINS et al. v. COLLINS et al.
(701 SE2d 134)

THOMPSON, Justice.

This appeal arises out of a dispute between appellants Oritha "Rick" Scoggins and Veverly Brooks and appellees Gloria Collins, Wanda Wallace, Cynthia Stamps-Jones and Stan Byars concerning the results of the November 2009 general election in the city of Riverdale.

Scoggins and Brooks were unsuccessful candidates for the office of city council for Ward 1 and Ward 3 of the city of Riverdale. After the polls closed on November 3, 2009, Collins, the election superintendent, collected the results from the voting machines. Machine 145241 initially recorded zero votes. During recertification of the election results three days later, however, the same machine recorded 60 votes which were included in the final election results. Stamps-Jones and Wallace were certified as the winners of the Ward 1 and Ward 3 races respectively. Appellants filed a petition in superior court challenging the results of the election, specifically alleging that Collins and others acted illegally and fraudulently by including the 60 votes in the final results, allowing Byars to be placed on the ballot in the Ward 3 race, and permitting a banner advertising a food drive sponsored by Wallace to be placed in front of city hall in the weeks before the election. After a hearing on the merits, the trial court directed a verdict in favor of appellees on all counts. The trial court entered its order granting appellees' motion for directed verdict on December 18, 2009. Appellants filed their notice of appeal on December 23, 2009, and on January 4, 2010 filed in this Court a

motion for expedited appeal and supersedeas. The motion was denied on January 8, 2010. Having reviewed the record, we dismiss part of the appeal as moot and affirm in part.

1. We conclude as an initial matter that appellants' challenge to the inclusion of Byars' name on the ballot constitutes a pre-election challenge rendered moot by the occurrence of the general election. See *Bodkin v. Bolia*, 285 Ga. 758, 759-760 (684 SE2d 241) (2009); *Randolph County v. Johnson*, 282 Ga. 160, 161 (1) (646 SE2d 261) (2007). See also *Brooks v. Brown*, 282 Ga. 154, 154 (646 SE2d 265) (2007) (in general, pre-election challenges to a candidate's qualifications become moot once the general election at issue has occurred); *Jordan v. Cook*, 277 Ga. 155, 157 (587 SE2d 52) (2003) (same). The issue of Byars' qualification to run for office is not of the type capable of repetition yet evading review. Therefore, we dismiss as moot that portion of the appeal challenging the inclusion of Byars' name on the November 2009 ballot. Compare *City of Greenville v. Bray*, 284 Ga. 641, 641 (670 SE2d 98) (2008) and *Randolph County*, supra, 282 Ga. at 161 (2) with *Poythress v. Moses*, 250 Ga. 452, 453 (1) (298 SE2d 480) (1983).

Appellants' remaining claims involve proper post-election challenges timely raised pursuant to OCGA §§ 21-2-521 and 21-2-522 and for which appellants timely sought both an expedited appeal and supersedeas. See OCGA § 21-2-524 (a) (petition timely if filed within five days of official consolidation of returns or within five days of certification of results after recount); OCGA § 21-2-528 (allowing request for extraordinary relief even prior to filing of notice of appeal or docketing of the record). Because the record demonstrates that appellants utilized "the legal mechanism to effect the threshold duty to act with dispatch," *McCreary v. Martin*, 281 Ga. 668, 670 (642 SE2d 80) (2007), these post-election challenges are not moot and will be addressed on the merits.

2. Georgia law presumes election results to be valid. OCGA § 21-2-522.1. "Thus, 'one challenging the results bears the burden of showing that the results are invalid due to an irregularity sufficient to place the entire election in doubt.' *McCranie v. Mullis*, 267 Ga. 416 (478 SE2d 377) (1996)." *Fuller v. Thomas*, 284 Ga. 397, 397-398 (1) (667 SE2d 587) (2008). Where the challenge is focused on improperly cast ballots or irregularities in the conduct of the election, as in this case, "the number of illegal or irregular ballots necessary to cast doubt on an election is derived by taking the difference between the total votes cast in the election and the race at issue, and adding the margin of victory in the race at issue." Id.

A total of 592 votes were cast in the November 2009 election. In

Ward 1, Stamps-Jones received 345 votes, Scoggins received 233 votes, for a total of 578 votes cast in that race. Adding the difference between the number of ballots cast (14) to the margin of victory in the race (112), Scoggins needs to show 126 illegal or invalid votes to cast doubt on the election. See *Fuller*, supra, 284 Ga. at 397 (1).

In Ward 3, Wallace received 332 votes, a third candidate, Brooks, received 210 votes, and Byars received 39 votes. Thus, 581 votes were cast in the Ward 3 race, a difference of 11 votes between the total number of ballots cast in Ward 3 and the number of ballots cast for the candidates. Adding the difference between the number of votes cast to the margin of victory in the race (122), Brooks needs to show 133 invalid votes to cast doubt on the Ward 3 election.

Appellants claim that (a) 60 votes from a machine which initially recorded zero votes were fraudulently added to the election results; (b) 124 votes were improperly counted from a machine for which there was no evidence showing it had been reset to zero on election day; and (c) 41 mail-in absentee votes were included in the election results although there were only 21 mail-in voters. Other than speculation and innuendo, appellants failed to make any showing in support of their claims. The record clearly demonstrates that due to a malfunction in machine 145241, the 60 in-person, advance votes recorded thereon were not included in the initial vote total. These votes were properly included in the final election results after they were confirmed by comparison to documents establishing the total number of votes cast in the election, the total number of absentee ballot applications filed, and the numbered list of advance, in-person voters. Regarding the mail-in, absentee votes, the evidence shows 21 mail-in ballots were cast and counted in the final election results with 20 votes cast in the Ward 1 contest and 21 votes cast in the Ward 3 contest. Finally, Ms. Stephanie Thomas, records custodian for the city of Riverdale, produced copies of the "zero" and result tapes for all voting machines used in the general election, proving that all voting machines were set to zero on or before the November 3 election. Appellants thus failed to make any showing placing the results of the Ward 1 and Ward 3 races in doubt,[1] and the trial court did not err by granting the motion for directed verdict.

3. Nor did the trial court err by denying appellants' motion for a jury trial. "A jury trial is not required in an election case when the

---

[1] Appellants also contend the placement of the food drive banner outside city hall cast doubt on the election. However, even assuming the banner advertising a food drive sponsored by Wallace to benefit flood victims constituted a prohibited election sign, the undisputed evidence supports the trial court's determination that the banner was placed outside the 150-foot perimeter required under Georgia law. See OCGA § 21-2-414.

alleged irregularities are insufficient to put the results of the election in doubt." *Fuller*, supra, 284 Ga. at 399 (2). See OCGA § 21-2-526 (a).

*Judgment affirmed in part and appeal dismissed in part. All the Justices concur, except Melton and Nahmias, JJ., who dissent.*

MELTON, Justice, dissenting.

This election case should be dismissed as moot, not considered for a second time. Our precedent is clear and unequivocal on this issue.

> Statutes providing for election contests are premised on the recognition that election-related appeals must be timely considered. *Jordan v. Cook*, 277 Ga. 155, 156 (587 SE2d 52) (2003). In fact, OCGA § 21-2-528 allows a request for extraordinary relief from this Court even prior to the filing of a notice of appeal or the docketing of the record in an appeal from a final determination in an election contest. Consequently, the party challenging either a primary or general election has the legal mechanism to effect the threshold duty to act with dispatch. *Jordan v. Cook*, supra at 156. Certainly, there are instances in which last minute requests for extraordinary relief in election contests are unavoidable. But, this case is not one of them. The general election has been held[, and Scoggins and Brooks waited over two weeks before seeking last-minute emergency relief which this Court reviewed on its merits and denied]. This Court must conclude that the policy considerations underlying the mootness doctrine apply to this election challenge. *Jordan v. Cook*, supra at 156. This case does not involve a question of the constitutionality of any statute or the interpretation of a constitutional provision. Compare *Poythress v. Moses*, 250 Ga. 452 (298 SE2d 480) (1983). What is more, while the issues raised by [Scoggins and Brooks] might be capable of repetition in another case, such issues would be reviewable upon the timely and proper invocation of the applicable provisions of the Election Code. *Caplan v. Hattaway*, 269 Ga. 582, 583 (501 SE2d 195) (1998). Important policy considerations mandate that litigants should make every effort to dispose of election disputes with dispatch and that the courts should not interfere with the orderly process of elections after the general election has been held. Id.

*McCreary v. Martin*, 281 Ga. 668, 670 (642 SE2d 80) (2007).

In light of this precedent, this appeal should be dismissed as

moot. Weeks after the election was complete, Scoggins and Brooks raised issues regarding the allegedly malfunctioning voting machines in their motion for expedited appeal and supersedeas. This Court reviewed the merits of the motion and denied it on January 8, 2010. At that point, we determined that the arguments raised did not throw the validity of the subject election into doubt and that no stay was necessary. If there had been any validity to the claims, we would have granted the motion for expedited appeal and supersedeas to resolve the matter as quickly and efficiently as possible.

In contravention of this efficient procedure, Scoggins and Brooks now replicate their meritless arguments in this appeal, and the majority considers them again. By doing so, the majority creates a procedure which disrupts the finality of elections after they have occurred rather than protecting their certainty, contrary to both policy and precedent. In this case, the election occurred on November 3, 2009. This Court should not prolong doubt as to its validity by waiting almost a year later to give it finality in an opinion which merely revisits issues that were disposed of nine months earlier. This invites uncertainty as to the election, itself, and it unduly calls into doubt any acts or votes taken or made by the challenged elected official during the time that he or she has been in office. This is exactly the type of doubt and uncertainty which public policy abhors. Accordingly, I must respectfully dissent.

I am authorized to state that Justice Nahmias joins in this dissent.

DECIDED SEPTEMBER 20, 2010 —
RECONSIDERATION DENIED OCTOBER 18, 2010.

*Michael B. King*, for appellant.
*Insley & Race, Deana Simon-Johnson, Joseph R. Buller III*, for appellee.