308 Ga. 170
FINAL COPY

S19A1498. PARHAM v. STEWART.

MELTON, Chief Justice.

This case stems from a challenge to the results of the March 2018 special election for the mayor of the City of Blythe, wherein Appellee Phillip Stewart defeated Appellant Cynthia Parham by a margin of four votes. Appellant filed a petition contesting the election results, alleging that illegal votes had been cast in the mayoral election. See OCGA § 21-2-522 (3).[1] After a bench trial, the court concluded that Appellant had failed to show that enough illegal votes had been cast to change or place in doubt the result of the election. Appellant filed a notice of appeal to this Court and, for the reasons that follow, we affirm the decision of the trial court.

The record shows that, in the March 20, 2018 special election for the mayor of the City of Blythe, Appellee was declared the winner

---

[1] "A result of a primary or election may be contested . . . [w]hen illegal votes have been received or legal votes rejected at the polls sufficient to change or place in doubt the result. . . ."

over Appellant by a vote of 61 to 57. The board of elections granted Appellant's request for a discretionary recount, which was performed on March 24. The recount confirmed the original vote tally, and the election results were certified that same day. Appellant filed her petition contesting the election on March 27, 2018, alleging that: (1) illegal votes had been cast by non-residents of the City of Blythe, and (2) Appellee, directly and/or through his campaign manager, John Daniel Martin,[2] engaged in acts of voter fraud and vote buying in order to influence the election.

At the close of discovery, Appellant filed a motion for summary judgment, which was denied. Thereafter, the parties proceeded to a bench trial and, after hearing the evidence, the trial court entered an order declaring the results of the March 2018 mayoral election to

---

[2] Martin was indicted on a misdemeanor charge of providing alcohol to a minor, and a felony charge of "vote buying." See OCGA § 21-2-570 ("Any person who gives or receives, offers to give or receive, or participates in the giving or receiving of money or gifts for the purpose of registering as a voter, voting, or voting for a particular candidate in any primary or election shall be guilty of a felony."). Martin's charges are related to his alleged purchase of alcohol for Jacob Odum, an 18-year-old, in exchange for Odum's vote in the mayoral election.

be valid. Though the trial court found that two voters (Walter Cook and Jacob Odum) had cast illegal votes,[3] the court determined that those two votes were not sufficient to change or place in doubt the result of the election. Appellant then filed this appeal.

1. As an initial matter, we asked the parties to submit briefs addressing whether we had jurisdiction to decide this appeal on the merits. See *Byrd v. Goodman*, 192 Ga. 466, 466 (15 SE2d 619) (1941) ("[I]t is the duty of this court to raise the question of its jurisdiction in all cases in which there may be any doubt as to the existence of such jurisdiction." (Citation and punctuation omitted.)). Specifically, we asked the parties whether, in light of our decisions in *Scoggins v. Collins*, 288 Ga. 26 (701 SE2d 134) (2010) and *Kendall v. Delaney*, 282 Ga. 482 (651 SE2d 685) (2007), the appeal had become moot. We conclude that we have jurisdiction to decide this case. "Under Georgia law an appeal will be dismissed if the question presented has become moot. OCGA § 5-6-48 (b) (3). An appeal

---

[3] Appellee does not appeal the trial court's findings with regard to these two voters.

becomes moot if the rights insisted upon could not be enforced by a judicial determination." *Randolph County v. Johnson*, 282 Ga. 160, 160 (646 SE2d 261) (2007). Citing policy reasons and relying on this Court's holding in *Kendall*, supra, Appellee argues that, because Appellant failed to seek a stay or supersedeas pursuant to OCGA § 21-2-528,[4] her challenge to the result of the general election is now moot. However, while "the established rule in Georgia is that a primary election contest becomes moot after the general election has taken place," (citation and punctuation omitted) *Dawkins-Haigler v. Anderson*, 301 Ga. 27, 27 (799 SE2d 180) (2017), we have routinely decided general election challenges on the merits, regardless of whether a stay or supersedeas was requested or obtained.[5] Indeed,

---

[4] OCGA § 21-2-528 states as follows:

An appeal from the final determination of the [trial] court may be taken within ten days from the rendition thereof as in other civil cases. The filing of a notice of appeal shall not act as a stay or supersedeas. The appellant may apply to the appellate court for a stay or supersedeas, and such court shall consider applications for stays or supersedeas in such cases without regard to whether any notice of appeal has been filed or the record docketed in such cases.

[5] See, e.g., *Martin v. Fulton County Bd. of Registration and Elections*, 307 Ga. 193 (835 SE2d 245) (2019); *Scoggins*, supra; *Fuller v. Thomas*, 284 Ga. 397 (667 SE2d 587) (2008); *Hunt v. Crawford*, 270 Ga. 7 (507 SE2d 723) (1998);

4

the permissive language of OCGA § 21-2-528, wherein a party "*may* apply to the appellate court for a stay or supersedeas," does not jeopardize the legal remedy requested by Appellant — i.e., a ruling declaring the general election result invalid. And, while it is important that a party seeking review of any election contest act with dispatch (as should the trial court in resolving the contest, see *Martin v. Fulton County Bd. of Registration and Elections*, 307 Ga. 193 (2) (835 SE2d 245) (2019)), those policy considerations have even greater weight in primary election challenges.[6]

Our decision in *Kendall v. Delaney*, supra, is an outlier in our general election case law and relied solely on cases involving primary election challenges without acknowledging the distinction between primary and general elections. Moreover, *Scoggins*, our

---

*Head v. Williams*, 269 Ga. 894 (506 SE2d 863) (1998); *Bailey v. Colwell*, 263 Ga. 111 (428 SE2d 570) (1993).

[6] That does not mean, however, that a general election challenge could never be rendered moot by other circumstances, such as the expiration of the successful candidate's term of office.

more recent case, held that while a pre-general election challenge to a candidate's qualifications was moot, post-election challenges to the conduct of the general election were not. Accordingly, we now overrule *Kendall*.[7]

2. Turning to the merits of Appellant's claims, when an unsuccessful candidate challenges the outcome of an election based upon allegations of illegal votes, allegations that "may be proven or disproven by examining or counting a specific number of ballots, we have required the evidence to show that a sufficient number of electors voted illegally or were irregularly recorded in the contest being challenged to change or cast doubt on the election." (Citations and punctuation omitted.) *Martin*, supra, 307 Ga. at 222 (3) (a). "Within that context, the party contesting an election generally must show a specific number of illegal or irregular ballots, or a specific number of voters who voted illegally," and "[t]hat number,

---

[7] To the extent that *Scoggins* implies that a general election challenge will be moot if a party fails to seek a stay or supersedeas pursuant to OCGA § 21-2-528, it is disapproved. The author recognizes that this opinion adopts a position contrary to his dissent in *Scoggins*.

in turn, must be sufficient to place the result of the contested election in doubt." (Citation and punctuation omitted.) Id. "It is not sufficient to show irregularities which simply erode confidence in the outcome of the election. Elections cannot be overturned on the basis of mere speculation, or an appearance of impropriety in the election procedures." (Citation omitted.) *Middleton v. Smith*, 273 Ga. 202, 203 (539 SE2d 163) (2000). "A trial court's findings in an election contest will not be disturbed unless clearly erroneous." (Citation and punctuation omitted.) *Banker v. Cole*, 278 Ga. 532, 533 (604 SE2d 165) (2004). With these principles in mind, we turn to Appellant's enumerations of error.

Appellant alleges that the trial court erred when it concluded that Clara Marie Stewart was a resident of the City of Blythe, that Gary Bodie was not offered something of value in exchange for his vote, and that Maryann Reeves Patton was competent to vote in the mayoral election, thereby making their votes valid. Appellant has failed to show that the trial court's findings were clearly erroneous.

(a) *Clara Marie Stewart*

Appellant argues that Appellee's ex-wife, Clara Marie Stewart, was not a resident of the City of Blythe at the time of the election and, therefore, cast an illegal vote. At trial, Stewart testified that she had lived in her ex-husband's home, along with their two children, and that she was a resident of the City of Blythe on election day. Appellant presented documentary and witness testimony to try to rebut Stewart's testimony. The trial court credited Stewart's testimony in concluding that she legally voted in the March 2018 election, and while we may not have ruled this way, we must defer to the trial court's credibility determinations. See *Holton v. Hollingsworth*, 270 Ga. 591, 593 (5) (514 SE2d 6) (1999) ("Findings of fact regarding voters' residency shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.") (Citations and punctuation omitted.). Consequently, the trial court did not clearly err in determining that Stewart cast a legal vote in the election.

(b) *Gary Bodie.*

Appellant claims that Gary Bodie's vote was unlawfully obtained by Martin because Martin, among other things, bought Bodie dinner in exchange for his vote. The crux of Appellant's argument is that the trial court erred when it failed to draw adverse inferences from Martin's repeated invocation of his Fifth Amendment right against compelled self-incrimination concerning his interactions with Bodie on the day of the election, and his alleged role in a vote-buying scheme with Appellee.[8] However, in its order validating the election results, the trial court acknowledged its discretion "to draw an adverse inference from the testimony of John Daniel Martin," but found "that other evidence offered rebutted that inference." And the record supports the trial court's conclusions. Indeed, both Bodie and Appellee testified at trial and denied

[8] To the extent that Appellant is arguing that the trial court was *required* to draw an adverse inference that could not be rebutted by other evidence, this is incorrect. In civil cases, every time a witness invokes his or her Fifth Amendment right, a trial court *may* draw an adverse inference against that witness's testimony, as the inference is "based upon an implied admission that a truthful answer would tend to prove that the witness had committed the act." *Hathcock v. Hathcock*, 249 Ga. 74, 75 (287 SE2d 19) (1982) (citing *Simpson v. Simpson*, 233 Ga. 17, 21 (209 SE2d 611) (1974)). However, our case law does not require a trial court to draw such an inference, nor does it state that the adverse inference is irrefutable.

Appellant's claims of vote buying. Because this testimony was sufficient to rebut an adverse inference, if drawn, the trial court did not clearly err in concluding that Bodie cast a valid vote in the mayoral election.

(c) *Maryann Reeves Patton.*

Lastly, Appellant argues that the evidence she presented at trial, coupled with Martin's invocation of his Fifth Amendment right concerning his election day interactions with Maryann Reeves Patton, was sufficient evidence to show that Patton did not have the mental capacity to vote. Appellant called witnesses to testify that Patton seemed confused after she left the polling station.[9] This evidence, however, could not establish that Patton did not have the mental capacity to vote in the 2018 mayoral election. See OCGA § 21-2-216 (b) ("In addition to the qualifications in subsection (a) of this Code section, no person . . . who has been judicially determined to be mentally incompetent may register, remain registered, or vote unless the disability has been removed."). Indeed, the record shows

---

[9] Notably, Appellant did not call Patton as a witness.

10

that Patton had been an active voter since 1999, and the Richmond County Board of Elections had never received a judicial determination that she did not have the mental capacity to vote. The trial court correctly determined that Appellant failed to prove that Patton lacked the sufficient mental capacity to vote.

Based on the foregoing, Appellant has failed to carry her burden by affirmatively showing that enough electors voted illegally so as to change or cast doubt on the result of the election.

3.     Next, Appellant claims that the trial court erred by failing to compel Martin to answer questions that, she claims, were not within the scope of his Fifth Amendment protection, and for denying Appellant's request to treat Martin as a hostile witness. We disagree.

It is well settled that when a witness asserts his privilege against self-incrimination in a civil case, "he must respond to each question asked, asserting the privilege to those questions he deems necessary." *Axson v. Nat. Sur. Corp.*, 254 Ga. 248, 249 (327 SE2d 732) (1985). If a motion to compel is made, "the trial court must

determine whether the privilege has been validly raised to each question." Id.

> To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.

(Citation and punctuation omitted.) *Page v. Page*, 235 Ga. 131, 133, n.1 (218 SE2d 859) (1975).

Here, Appellant claims that Martin should have been required to answer questions concerning: whether he was familiar with, or had been to, a certain convenience store in Blythe; whether he owned a specific Visa credit card; and if he had a Facebook account, or was active on social media. Because these questions were directly related to Martin's pending felony and misdemeanor charges,[10] it was not error for the trial court to refuse to compel Martin to answer

---

[10] Indeed, Martin was accused of purchasing alcohol for Jordan Odum from a convenience store in Blythe with his Visa credit card, and then posting about the incident on social media.

them. Likewise, we cannot say that the trial court abused its discretion in denying Appellant's motion to treat Martin as a hostile witness based upon his assertion of his Fifth Amendment right in response to these questions. See *Knight v. State*, 266 Ga. 47, 49 (4) (b) (464 SE2d 201) (1995) ("Whether leading questions are permitted is within the trial court's discretion, and exercise of that discretion will not be interfered with by the appellate courts unless the discretion is abused." (Citation omitted.)).

4. Finally, Appellant alleges that the trial court erred in denying her pre-trial motion for summary judgment. We disagree.

> Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). We review the grant or denial of a motion for summary judgment de novo, and "we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant." (Citation and punctuation omitted.) *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010).

*Woodcraft by MacDonald, Inc. v. Ga. Cas. and Sur. Co.*, 293 Ga. 9, 10 (743 SE2d 373) (2013). See also *American Multi-Cinema v.*

*Brown*, 285 Ga. 442, 444-445 (2) (679 SE2d 25) (2009). Viewing the record in this light, and for the reasons discussed above, we affirm the trial court's denial of Appellant's pre-trial motion for summary judgment.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 28, 2020.
Election contest. Richmond Superior Court. Before Judge Stephens from Western Circuit.
*John R. B. Long*, for appellant.
*Enoch Tarver, Edward J. Tarver*, for appellee.