## WHEELER *et al. v.* BEAZLEY.

No. 10680.   OCTOBER 17, 1935.

*J. A. Mitchell* and *J. G. Faust,* for plaintiffs.

*J. A. Beazley,* for defendant.

BELL, Justice.   J. H. Wheeler and T. M. Richards, citizens and taxpayers of Taliaferro County, instituted quo warranto proceedings against C. H. Beazley, an incumbent in office as a member of the board of commissioners of that county.   The court refused the application to file an information, and the plaintiffs excepted.

The petition alleged that the respondent was elected to the office named, on November 6, 1934, and is now holding the office, notwithstanding he was ineligible at the time of his election and has not since become eligible as the incumbent in such office.   The grounds of the alleged ineligibility were as follows:   Prior to the year 1931, the respondent had taken the voter's oath and subscribed his name in the voters' book as required by law, and had been duly qualified as a registered voter.   He thereafter defaulted

in the payment of his state, county, and school taxes for 1931, 1932, and 1933, so that his name could not legally remain on any registration list until he made the necessary payment of taxes and otherwise again complied with the law as to registration. After the adoption in 1932 of the amendment to the constitution (Ga. L. 1931, p. 102) requiring, as to taxes, the payment only of poll-tax as a condition to registration and voting, and in due time before the respondent's election in 1934, he paid all poll-tax due to the State of Georgia, and his name was restored by the registrars to the list of registered voters. He did not, however, "rewrite his name upon the registration books of said county," and for this reason, it is alleged, he did not become a qualified voter, and his name was illegally placed upon the list of registered voters.

If the respondent was not a qualified voter, he is ineligible to hold the office in question. In 1913 the legislature passed an act providing for a permanent voters' book, referred to as the permanent qualification book. Ga. L. 1913, p. 115; Code of 1933, § 34-101 et seq. This act declared: (1) "that . . the tax-collectors of the several counties of this State are required to keep a book to be called the permanent qualification book, upon which all persons desiring to qualify as electors shall be required to qualify as now required by the constitution and laws of the State. Such electors upon qualification shall sign their names in alphabetical order, and shall be subject to examination by the board of registrars as now provided by law. Such board of registrars shall have the right, and shall be charged with the duty, of examining each two years the qualification of each elector entered thereon, and shall not be limited or stopped by the action taken at any prior time." (2) "that each year the tax-collectors of the several counties shall make up the registration lists for the year as now provided by law, by putting on such registration list the names of such electors as appear on such permanent qualification book who have duly paid all taxes due and required of them at least six months prior to the election for which the registration list is made up." (3) "that the electors who have qualified and have signed the permanent qualification book shall not thereafter be required to register or further qualify, except as may be required by the boards of registrars. And such electors shall in all cases be entitled to receive the same notice and shall have the same rights as now given by law; provided, that

no person shall remain registered longer than he retains the qualification under which he registered." (4) "that the tax-collector shall furnish to the board of registrars the list of persons that he registers for each year as now provided by law for furnishing registration lists to such board of registrars. And the said board shall proceed as now provided to determine whether the list furnished contains the names of all and only the voters or electors qualified and entitled to vote at such election."

It is the contention of relators that under section 3 of this act the respondent, after becoming disqualified because of non-payment of taxes, was no longer entitled to any right based upon his signature in the voters' book; and that after paying the required taxes, he should again sign the voters' book, containing the voter's oath, before his name could be lawfully restored by the registrars to the list of registered voters. In other words, that he should start anew with the process of registration. The question turns on the meaning of the phrase "remain registered." One does not become a registered voter merely by taking the voter's oath and signing his name in the voters' book. A person becomes registered as a voter only by meeting this and other requirements of the law and by the action of the registrars in placing his name on the list of registered voters. Any law is to be construed according to the apparent intention of the legislature, and in ascertaining this intention the whole statute should be considered. The meaning of a word may be colored by its context, and it may happen that technical words were not used in a technical sense. So, a word may have different meanings in the same statute, or even in the same sentence. The word "register," in different forms, is used three times in section 3 of the act of 1913. In the first and third places, it apparently signifies the act of signing one's name in the voters' book; while, as used the second time, it plainly refers to the status or condition of being registered, meaning that the person's name has been entered upon the list of registered voters according to law. Thus, under this act, a person loses his status as a registered voter merely by his failure to pay the required taxes, and this is not to say that on removal of the resulting disqualification he must again sign his name in the voters' book, before the registrars may lawfully restore his name to the list of registered voters. The registrars may hear any competent evidence "concerning the re-

314

moval of the disqualification of any person whose name appears on the list of disqualified voters." Civil Code of 1910, § 62.

This rule as to power of the registrars, though existing before the passage of the act of 1913, is to be considered in the construction of this act. The act does not of itself require a new signature in the voters' book as a condition precedent to restoration to the list of registered voters, after removal of a disqualification occurring subsequently to the proper placing of one's name on such list, and there is no other law which makes such requirement. The language of section 3 of the act of 1913 was changed in the adoption of the Code of 1933, so as to read, "no person shall remain a qualified voter longer than he shall retain the qualification under which he registered." § 34-115. Whether or not the change made in codification amounted to an amendment of the law, this Code had not become effective at the time of the respondent's election. Code of 1933, pp. v-vii. It might be considered, however, as expressing the view of the codifiers, and as persuasive to some extent on the question. Under the law as it existed at the time of the respondent's election, the allegations made by the relators did not show that he was ineligible to hold the office in question, and the judge did not err in refusing the application for the writ of quo warranto. See *Chapman* v. *Sumner School District,* 152 *Ga.* 450 (2) (109 S. E. 129) ; *Davis* v. *Warde,* 155 *Ga.* 748 (4) (118 S. E. 378) ; *Culbreth* v. *Cannady,* 168 *Ga.* 444 (148 S. E. 102) ; *Cooper* v. *Lewis,* 177 *Ga.* 229 (3) (170 S. E. 68, 88 A. L. R. 808). The present case differs on its facts from *Lee* v. *Byrd,* 169 *Ga.* 622 (151 S. E. 28), and *Shaw* v. *DeVane,* 169 *Ga.* 702 (151 S. E. 347), where the taxes were not paid at the time of signing the voters' book.

*Judgment affirmed. All the Justices concur, except Russell, C. J., absent because of illness.*