## S99A0021. HOLTON v. HOLLINGSWORTH et al.

(514 SE2d 6)

CARLEY, Justice.

In the 1997 municipal election in the City of Midway, a total of 271 ballots were cast. In the mayoral race, however, only 269 voters selected between the two candidates. The incumbent, Britt Hollingsworth, received 136 votes and the challenger, Buddy Holton, received 133 votes. Holton filed a petition to contest the election, alleging that a sufficient number of voters were unqualified so as to place the results of the election in doubt. The trial court upheld the election, and Holton appeals.

1. Subsequent to the date of the challenged election, the General Assembly repealed the separate Georgia Municipal Election Code, former OCGA § 21-3-1 et seq., and amended the Georgia Election Code, OCGA § 21-2-1 et seq., so as to make it applicable to municipal elections. OCGA § 21-2-15. Although the Election Code, as amended, is very similar to the repealed Municipal Election Code, we apply the latter in this case.

2. Holton challenged this election on the ground that "illegal votes have been received . . . sufficient to change or place in doubt the result. . . ." Former OCGA § 21-3-422 (3). See also current OCGA § 21-2-522 (3). To cast doubt on an election, the contestant must show that a sufficient number of unqualified "electors voted *in the particular contest being challenged. . . .* [Cit.]" (Emphasis in original.) *Taggart v. Phillips,* 242 Ga. 454, 455 (249 SE2d 245) (1978). Thus, the number of illegal votes necessary to place an election in doubt is the same as the margin of victory only where the record affirmatively discloses that all of the unqualified voters actually cast votes in the contested race. *Miller v. Kilpatrick,* 140 Ga. App. 193 (230 SE2d 328) (1976). The trial court cannot presume that each unqualified voter actually voted in the challenged race. *Miller v. Kilpatrick,* supra. Here, two fewer votes were cast in the mayoral race

than ballots were cast in the municipal election. Because the margin of victory in this case was three votes, Holton could have prevailed by showing the trial court that three voters who actually voted in the mayoral race were disqualified. However, if Holton did not affirmatively show that the challenged voters had cast their votes in the mayor's race, then he would have to show that a total of at least five voters were disqualified, since two voters had not voted in the contested race. The trial court correctly found that two of the voters challenged by Holton were not qualified, but noted that neither of them testified that she voted in the mayor's election. Therefore, three additional voters must be unqualified in order for Holton to prevail.

3. Holton contends that one voter was not qualified because he was a convicted felon who had not "reregistered" to vote after completion of his sentence.

"No person who has been convicted of a felony involving moral turpitude may register, remain registered, or vote except upon completion of the sentence." Ga. Const. of 1983, Art. II, Sec. I, Par. III (a). See also former OCGA § 21-3-122 (b); current OCGA § 21-2-216 (b). *Wheeler v. Beazley*, 181 Ga. 311, 313 (182 SE 182) (1935) involved construction of a similar statute which provided that "no person shall *remain registered* longer than he retains the qualification under which he registered." (Emphasis supplied.) This Court held that the phrase "remain registered" refers to the status or condition of being registered or having one's name on the list of registered voters, rather than signing the oath and otherwise complying with the registration law. *Wheeler v. Beazley*, supra at 313. Thus, a person who loses his status as a registered voter does not have to sign his name again before the registrars may lawfully restore his name to the list of registered voters. *Wheeler v. Beazley*, supra. We therefore conclude that, although the convicted felon in this case did not remain registered while serving his sentence, he did not have to "reregister" once he completed his sentence.

4. Holton urges that Arthur Benton, a disabled voter, cast an illegal absentee ballot because he received unauthorized assistance in voting. The person who assists a disabled elector in preparing an absentee ballot must be a relative or "qualified to vote in the same municipality. . . ." Former OCGA § 21-3-285 (b). See also current OCGA § 21-2-385 (b) ("qualified to vote in the same county or municipality"). Joan Williams, who assisted Mr. Benton, was not a relative and she did not register to vote until the day of the election, which was one day *after* she assisted Mr. Benton. However, the evidence showed that the election manager approved Ms. Williams' assistance of Mr. Benton and no one knew at the time that she was not on the voters list. Where an officer conducting the election makes an error, " 'since the voter has no power over the officer, the officer's blunder

will not disfranchise the voter — unless it is mandatory under the law, whereas the voter may by his own neglect disfranchise himself.' [Cit.]" (Emphasis omitted.) *Malone v. Tison,* 248 Ga. 209, 213-214 (3) (282 SE2d 84) (1981). See also *Blackburn v. Hall,* 115 Ga. App. 235, 240 (154 SE2d 392) (1967). Furthermore, we find nothing in former OCGA § 21-3-285 (b) making compliance with its provision a "mandatory" condition of the counting of the absentee ballot. Indeed, the statutory form for absentee ballots, which includes the oath of the person assisting the elector, does not warn of the requirement that that person be a relative or a qualified voter in the municipality. Former OCGA § 21-3-284 (d). See also current OCGA § 21-2-384 (c). In addition, current OCGA § 21-2-385 (b), the counterpart to former OCGA § 21-3-285 (b), cannot be enforced in a federal election. 42 U.S.C. § 1973aa-6; 1984 Att'y Gen. Op. No. 84-15. Moreover, other states do not reject ballots in these circumstances. 29 CJS, Elections, § 208 (c), pp. 571-572; 26 AmJur2d, Elections, § 333, pp. 133-134. Accordingly, we hold that Mr. Benton's vote was properly counted.

5. Holton also contends that four voters were unqualified because they were not residents of the City.

No person may vote in any municipal election unless he is "[a] resident of the municipality in which such person seeks to vote. . . ." Former OCGA § 21-3-122 (a) (4). See also current OCGA § 21-2-216 (a) (4). Wherever a form of "the word 'reside' occurs either in the statutes or in the constitution of Georgia with respect to voting, it should be construed to mean 'domicile.' " *Avery v. Bower,* 170 Ga. 202, 206 (2) (152 SE 239) (1930). This meaning of residence is consistent with the rules for determining residence in the Election Code. Current OCGA § 21-2-217. The former Municipal Election Code had no such rules, yet it had a residence requirement which was identical to the Election Code. Indeed, the amended version of the Election Code explicitly applies those rules to the determination of residence in a municipality. Current OCGA § 21-2-217 (a) (2), (3) and (6). Thus, we will apply the rules for determining residence here. *Davidson v. Bryan,* 242 Ga. 282, 284 (2) (248 SE2d 657) (1978). In relevant part, subsection (a) of current OCGA § 21-2-217 provides as follows:

> (2) A person shall not be considered to have lost such person's residence who leaves such person's home and goes into another state, county, or municipality in this state, for temporary purposes only, with the intention of returning, unless such person shall register to vote or perform other acts indicating a desire to change such person's citizenship and residence;
> (3) A person shall not be considered to have gained a residence in any county or municipality of this state into

which such person has come for temporary purposes only without the intention of making such county or municipality such person's permanent place of abode; . . .

(9) The mere intention to acquire a new residence, without the fact of removal, shall avail nothing; neither shall the fact of removal without the intention. . . .

In determining domicile, the registrars must consider both the applicant's expressed intent and any relevant circumstances, including business pursuits, sites of real property owned by the applicant, and other "factors that the registrars may reasonably deem necessary to determine the qualification of an applicant to vote in a primary or election," and the registrars' decision is presumptive evidence of a person's residence for voting purposes. Current OCGA § 21-2-217 (b).

Two of the voters challenged on residency grounds were Howard Freeman and his wife Carolyn Freeman. Their testimony showed that Mr. Freeman grew up in Midway and entered the military, and that all of his relatives still live in Midway. When Mr. Freeman retired from the military in 1993, the Freemans had a house in Hinesville, but always considered Midway to be their home. Mr. Freeman worked for the City of Midway, and they would regularly travel back and forth between the two cities. The Freemans attend church in Midway and had a trailer there which they sold two or three years ago. After the sale of the trailer, they would stay in Midway with Mr. Freeman's mother. Mr. Freeman apparently still owns some real property in Midway and is in Midway almost every day. Mrs. Freeman's bank account is in Midway and she has voted in Midway for 16 years. The Freemans' expressed intent is to keep their house in Hinesville temporarily and to return to Midway permanently.

Findings of fact regarding voters' residency "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witness[es]. [Cit.]" *Bell v. Cronic*, 248 Ga. 457, 459 (2) (283 SE2d 476) (1981). The evidence authorized the trial court's finding that both Mr. and Mrs. Freeman were qualified to vote in the City of Midway.

We need not address the evidence concerning the residency of the remaining two voters challenged by Holton, because two would not be a sufficient number of disqualified voters to place the election in doubt. See Division 2, supra.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 1, 1999.

*Richard D. Phillips,* for appellant.

*Ratcliffe, Smith & Rose, Charles P. Rose, Jr., J. Sidney Flowers,* for appellees.