S07A0921. McINTOSH COUNTY BOARD OF ELECTIONS et al.
v. DEVERGER.
S07A0922. GROVNER v. DEVERGER.
(651 SE2d 671)

HUNSTEIN, Presiding Justice.

In the November 7, 2006 general election for the District 1 seat on the McIntosh County Board of Commissioners, Nathaniel Grovner was declared the winner over George Deverger by a vote of 534 to 530. After a hearing on Deverger's petition contesting the election results, the trial court found that in District 1 four votes had been wrongfully rejected and four additional votes had "irregularities" rendering them illegally cast. Given the slim margin of victory, it found these problems sufficient to invalidate the election and ordered that a new election be held on March 20, 2007. Grovner appeals in Case No. S07A0922; the McIntosh County Board of Elections and the McIntosh County Board of Registrars ("McIntosh County") appeal in Case No. S07A0921. Motions for supersedeas filed by Grovner and McIntosh County were granted and the appeals consolidated. Although we find that the trial court's ruling was error as to the illegally cast votes, it was correct as to the wrongfully rejected votes and thus, for the reasons that follow, we affirm.

1. An election may be contested "[w]hen illegal votes have been received or legal votes rejected at the polls sufficient to change or place in doubt the result." OCGA § 21-2-522 (3). When illegal voting has been alleged, "it is only necessary to show (1) that electors voted *in the particular contest being challenged* and (2) a sufficient number of them were not qualified to vote. . . . [Cit.]" (Emphasis in original.) *Taggart v. Phillips*, 242 Ga. 454, 455 (249 SE2d 245) (1978) (decided under prior version of OCGA § 21-2-522). See also *Jones v. Jessup*, 279 Ga. 531, 532 (615 SE2d 529) (2005); *Mead v. Sheffield*, 278 Ga. 268, 274-275 (601 SE2d 99) (2004) (Hunstein, J., concurring specially) (recognizing distinction between illegal voter cases and irregular ballot cases); *Bailey v. Colwell*, 263 Ga. 111 (428 SE2d 570) (1993). The party contesting the election has the burden of making this showing, as election returns are presumed to be valid. *Jones,* supra at 531. Here, Deverger failed to show that the votes deemed illegally cast by the trial court, i.e., those of Nancy M. Shirah, Ernestine Moran, Dell Patrone and David E. Shepherd, were cast in the challenged race. Thus, they should not have been considered in assessing whether the results of the election have been placed in doubt.

2. As for the votes the trial court deemed wrongfully rejected, Deverger "need not establish how the rejected voters would have voted; he need only establish that sufficient legal votes were rejected to change or place in doubt the result. [Cits.]" *Whittington v. Mathis*,

253 Ga. 653, 655 (2) (324 SE2d 727) (1985) (decided under prior version of OCGA § 21-2-522). Thus, we must consider whether the four voters at issue were improperly disenfranchised.

(a) Bonita Caldwell was registered in District 1 and was a candidate for office in that district. Board of Elections chairperson Elenore D. Gale testified at the hearing on Deverger's petition that Caldwell was given a District 3 ballot during advance voting by mistake. Prior to casting the ballot, Caldwell realized that her name was not on it and brought the error to the attention of election officials. Gale voided the District 3 ballot and Caldwell was issued a District 1 ballot, which she subsequently cast. The district number associated with Caldwell's name on the list of certified absentee/advance voters was not updated to reflect this change, however.

The trial court declined to accept this oral testimony over the official record of the election, and "a trial court's findings in an election contest will not be disturbed unless clearly erroneous. [Cit.]" *Streeter v. Paschal*, 267 Ga. 207, 208 (1) (476 SE2d 759) (1996). Because the list of certified absentee/advance voters provided to the Secretary of State indicated that Caldwell voted in District 3, the trial court's conclusion that Caldwell was improperly disenfranchised in District 1 is not clearly erroneous.

(b) The Board of Registrars rejected Shirley Blocker's absentee ballot because there was no voter registration card on file for her. In an election contest, "a vote cast by a person who has been listed on the official list of electors for a period of ten years or longer shall be rebuttably presumed to be a legal vote despite an unsigned voter registration card," as long as the person continues to meet other eligibility requirements. OCGA § 21-2-522.1. Under such circumstances, it may be presumed that the unsigned card is a replacement of the original, properly signed card. Id. Similarly, where a person has been officially registered to vote for at least ten years and *no* registration card is on file, it may be presumed that the card has been lost or misplaced. Because an error on the part of an election official will not operate to disenfranchise a voter, *Holton v. Hollingsworth*, 270 Ga. 591, 592-593 (4) (514 SE2d 6) (1999), we hold that the rebuttable presumption of legality created by OCGA § 21-2-522.1 applies to the absence of a registration card as well as to the existence of an unsigned registration card.

Blocker has been registered to vote in McIntosh County since at least 1994, and the presumption that her vote was legal has not been rebutted. Moreover, chief registrar Robert Mucha testified at the hearing on Deverger's petition that Blocker's card was located after the election, signed properly and filed under her former last name of Moore. Thus, Blocker was improperly disenfranchised.

(c) Carolyn Goodbread's absentee ballot was also rejected because there was no voter registration card on file for her. Although Goodbread's card was never found, she has been registered to vote in McIntosh County since at least 1994 and voted there as recently as 2002. Thus, she was improperly disenfranchised for the reasons set forth in subdivision (b), supra.

(d) "Henry James" is shown on the list of certified absentee voters as having voted in District 1; this ballot was apparently voided, as "Henry James" is also shown on the list of rejected absentee voters. There is no one by this name registered to vote in District 1, and at the hearing on Deverger's petition, Gale testified that this person's correct name is "Henry Jones." Accordingly, Henry Jones was improperly disenfranchised by the incorrect recording of his name and subsequent rejection of his ballot.

3. Given the four-vote margin of victory in the challenged race, the wrongful rejection of the above four votes was sufficient to place the results of the election in doubt pursuant to OCGA § 21-2-522 (3).

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 24, 2007 —
RECONSIDERATION DENIED OCTOBER 29, 2007.

*James A. Chamberlin, Jr., James R. Coppage*, for McIntosh County Board of Elections et al.

*Adam S. Poppell III*, for Deverger.

*Phillips & Kitchings, Richard Phillips*, for Grovner.