## S12A0140. COOK v. BOARD OF REGISTRARS OF RANDOLPH COUNTY.

### (727 SE2d 478)

NAHMIAS, Justice.

Henry Cook appeals the trial court's ruling that he is not a resident of Randolph County and therefore not an elector qualified to vote in that county. We granted Cook's application for discretionary appeal and directed the parties to address this Court's jurisdiction over this appeal as well as the merits of the trial court's ruling. Because a determination of voter qualifications, not clearly linked to a particular election, does not bring an appeal within the Supreme Court's jurisdiction over "cases of election contest," Ga. Const. of 1983, Art. VI, Sec. VI, Par. II (2), and because no other basis for this Court's jurisdiction appears to exist, we transfer this case to the Court of Appeals and do not reach the merits.

1. On October 25, 2010, after a hearing held pursuant to OCGA § 21-2-228, the Appellee Board of Registrars of Randolph County ruled that Cook, who was then serving on the Randolph County Board of Education, was not a resident of Randolph County and therefore was not an elector qualified to vote in that county. See OCGA § 21-2-216 (a) (4) (to vote in a primary or general election, a person must be a "resident of this state and of the county . . . in which he or she seeks to vote"). Appellant appealed that ruling to the superior court, see OCGA § 21-2-228 (f), and filed a motion for an emergency hearing and a motion for stay and/or supersedeas, basing the motions in part on the ground that he had qualified to be on the ballot as a candidate for the School Board at the November 2, 2010, general election. Before the trial court ruled, Cook voted in and won the November 2 election; the following day, the court stayed the Board of Registrars' ruling.

On November 29, 2010, the trial court issued an order directing that this case be tried with a separate case that Cook had filed against the Board of Elections of Randolph County, apparently after he learned that the elections board was contemplating filing a challenge to Cook's qualifications as a candidate for the November 2 election based on the Board of Registrars' ruling.[1] On December 29, 2010, however, the trial court announced that it was dismissing the lawsuit challenging Cook's candidacy as moot because the election had already occurred. The court proceeded only with the hearing on the appeal of the Board of Registrars' decision regarding Cook's qualifications as a voter.

---

[1] No documents related only to the elections board case are in the record on appeal here.

The trial court heard extensive evidence from both parties regarding Cook's residency. On April 15, 2011, the court entered an order concluding that Cook was not a resident of Randolph County and therefore was not an elector qualified to vote there. This Court granted Cook's timely application for discretionary appeal. See OCGA § 5-6-35 (a) (1) (requiring an application to appeal from decisions of the superior courts reviewing decisions of local administrative agencies).

2. In granting the application, we asked the parties to address first whether this Court has jurisdiction over this case. "Where there is uncertainty as to jurisdiction in any given case, this Court has a mandatory responsibility to determine whether jurisdiction, in fact, exists." *Brooks v. Brown*, 282 Ga. 154, 154 (646 SE2d 265) (2007). The jurisdiction of the Supreme Court of Georgia is delineated in our Constitution. See Ga. Const. of 1983, Art. VI, Sec. VI, Pars. II-V. Appeals that do not come within our limited jurisdiction must go to the Court of Appeals. See Art. VI, Sec. V, Par. III.

(a) *Election Contests*

(1) Article VI, Section VI, Paragraph II (2) of the 1983 Constitution provides that this Court has exclusive appellate jurisdiction over "[a]ll cases of election contest." Interestingly, although we have decided many cases that appear to have come to this Court under this jurisdictional heading, we have never discussed its meaning. This case requires us to do so.

Before 1977, the Constitution contained no provision giving this Court direct appeal jurisdiction over election contests. Consequently, appeals of election cases, however defined, properly went first to the Court of Appeals, see, e.g., *Miller v. Kilpatrick*, 140 Ga. App. 193 (230 SE2d 328) (1976) (post-election challenge contending that enough illegal votes were cast to change or place in doubt the election result), unless the case had some other component, like a constitutional question, that brought it under one of this Court's other jurisdictional headings. See, e.g., *Collins v. Williams*, 237 Ga. 576, 577 (229 SE2d 388) (1976) (deciding an election contest case that also involved a challenge to the constitutionality of a statute). In 1977, however, the General Assembly passed a statute purporting to alter the jurisdiction of the Supreme Court and Court of Appeals. See Ga. L. 1977, p. 710, § 1. That act, among other things, gave this Court jurisdiction of "cases involving State revenue, contested elections, and the validity of legislative enactments of municipalities." Id. at 711.

In *Collins v. State*, 239 Ga. 400 (236 SE2d 759) (1977), we held that the General Assembly did not have the constitutional authority to add to the constitutionally established jurisdiction of the Supreme Court. See id. at 401-402. However, "[t]o effectuate the legislative

intent of [the] Act," we adopted an order directing the Court of Appeals to transfer to the Supreme Court all "(1) Cases involving the revenues of the state, (2) Election contests, and (3) Cases in which the constitutionality of any municipal or county ordinance or other legislative enactment is drawn into question." Id. at 403. "Election contests" was thus used as the equivalent of "contested elections." "When this state adopted a new constitution in 1983, the jurisdictional changes made by *Collins* [*v. State*] were incorporated" in Paragraph II of Article VI, Section VI, with the exception of cases involving state revenues. *Collins v. Am. Tel. & Tel. Co.*, 265 Ga. 37, 38 (456 SE2d 50) (1995) (recognizing that the transfer order adopted in *Collins v. State* was superseded by the 1983 Constitution).

(2) When this Court took jurisdiction of "[e]lection contests" in *Collins v. State* and when "election contest[s]" were made a part of our exclusive appellate jurisdiction in the 1983 Constitution, various lawsuits contesting elections were expressly authorized by the Georgia Election Code. That Code was enacted in 1964 to, among other things, "prescribe the procedure for contesting the results of primaries and elections." Ga. L. 1964, ex. sess., pp. 26-28. Former Chapter 34-17 was entitled "Contested Primaries and Elections," and former Code Ann. § 34-1702, entitled "Contest authorized: contestant," said that a candidate for a primary or general election or "five electors who were entitled to vote" could contest four aspects of an election: (1) "The nomination of any person who is declared nominated at a primary as a candidate for any Federal, State, or county office"; (2) "the election of any person who is declared elected to any such office (except when otherwise prescribed by the Federal or State Constitution)"; (3) "the eligibility of any person declared eligible to seek any such nomination or office in a run-off primary or election"; or (4) "the approval or disapproval of any question submitted to electors at an election." Id. This provision is essentially maintained in the current code, with the extension to cover candidates for municipal office and the authorization of contests by a single eligible voter rather than five. See OCGA § 21-2-521.

In addition, former Code Ann. § 34-1703, entitled "Grounds for contest," provided:

> A result of a primary or election may be contested on one or more of the following grounds:
> (1) Misconduct, fraud, or irregularity by any primary or election official or officials sufficient to change or place in doubt the result;
> (2) When the defendant is ineligible for the nomination or office in dispute;

(3) When illegal votes have been received or legal votes rejected at the polls sufficient to change or place in doubt the result;

(4) For any error in counting the votes or declaring the result of the primary or election, if such error would change the result; or

(5) For any other cause which shows that another was the person legally nominated, elected, or eligible to compete in a run-off primary or election.

The grounds for contesting the result of a primary or election remain the same today. See OCGA § 21-2-522 (1)-(5).

At a minimum, it is clear that the phrase "[a]ll cases of election contest" as used in the 1983 Constitution includes these challenges to the *candidates for* and *results of* elections long recognized by statute, and this Court accordingly has decided many such cases. See, e.g., *Scoggins v. Collins*, 288 Ga. 26 (701 SE2d 134) (2010) (post-election challenge to election result under OCGA § 21-2-522 based on a candidate's alleged ineligibility to hold office and alleged misconduct of election officials and miscounting of votes); *Lewis v. O'Day*, 284 Ga. 423 (667 SE2d 594) (2008) (post-election challenge to election result based on alleged misconduct of election officials, see OCGA § 21-2-522 (1)); *McIntosh County Bd. of Elections v. Deverger*, 282 Ga. 566 (651 SE2d 671) (2007) (post-election challenge to election result based on alleged casting of illegal votes and wrongful rejection of legal votes, see OCGA § 21-2-522 (3)); *Allen v. Yost*, 281 Ga. 102 (636 SE2d 517) (2006) (post-election challenge to election result based on alleged misconduct of election officials and casting of illegal votes, see OCGA § 21-2-522 (1) and (3)).

(3) Before 1980, there was no statutory provision for filing *pre-election* contests to the eligibility of candidates for election, but case law permitted such challenges. See *Griggers v. Moye*, 246 Ga. 578, 579 (272 SE2d 262) (1980) (holding that, although the election code provided only for post-election challenges to a candidate's qualifications, "this does not preclude a complaint for declaratory judgment and injunctive relief from being filed prior to the primary or election, where the ground for contest is that the nominee is ineligible for nomination or office under Code Ann. § 34-1703 [(2)]"). In 1980, the General Assembly enacted Code Ann. § 34-304, now OCGA § 21-2-5, and Code Ann. § 34-406, now OCGA § 21-2-6, expressly authorizing such pre-election challenges. See Ga. L. 1980, pp. 312, 312-314.

OCGA § 21-2-5 permits the Secretary of State or an eligible voter to file a pre-election challenge to the qualifications of a candidate who has filed to run in an upcoming election for a state or federal office.

Similarly, OCGA § 21-2-6 permits local boards of election and other election "superintendents," see OCGA § 21-2-2 (35) (A)-(D), or eligible voters to file pre-election challenges to the qualifications of a candidate who has filed to run in a pending election for a county or municipal office. Such candidacy challenges are necessarily directed to a specific election, and so they also naturally qualify as "cases of election contest" within this Court's jurisdiction. Accordingly, this Court has decided several cases of this type as well. See, e.g., *City of Greenville v. Bray*, 284 Ga. 641 (670 SE2d 98) (2008) (pre-election challenge to a candidate's qualifications to run for mayor); *Handel v. Powell*, 284 Ga. 550 (670 SE2d 62) (2008) (pre-election challenge to a candidate's qualifications to run for the Georgia Public Service Commission); *Jordan v. Cook*, 277 Ga. 155 (587 SE2d 52) (2003) (pre-election challenge to a county candidate's qualifications to run in a primary, involving the appellant in this case). See also *Bodkin v. Bolia*, 285 Ga. 758 (684 SE2d 241) (2009) (dismissing as moot a case in which a board of elections ruled that a candidate's nomination petition under OCGA § 21-2-170 to run as an independent candidate in an upcoming election did not meet legal requirements).[2]

(4) Legal challenges to the qualification of particular voters, or "electors," are a more difficult question.[3] In the 1964 Election Code, the General Assembly also enacted extensive rules regarding the registration of voters, see former Code Ann. §§ 34-601 to 34-636, including provisions for challenging the qualifications of voters, see former Code Ann. §§ 34-627 and 34-628. Today's election code contains similar provisions. OCGA § 21-2-228 permits a county or municipal board of registrars to challenge a person's right to register to vote or to remain on the list of electors, and OCGA § 21-2-229 permits an elector to bring the same type of challenge.

By contrast, OCGA § 21-2-230, which was enacted in 1994, see Ga. L. 1994, p. 1443, § 3, grants an elector, but not a board of registrars, the authority to challenge another elector's right to vote in a particular election. A challenge brought under OCGA § 21-2-230 involves a pre-election contest regarding a particular election — whether a voter is qualified to vote in it — much as OCGA § 21-2-522 (3) authorizes certain post-election contests based on "illegal votes . . . received or legal votes rejected at the polls." These voter-based

---

[2] Thus, the Court of Appeals improperly decided, albeit without mention of jurisdiction, an appeal of a challenge to a candidate's qualifications to run for county sheriff brought under OCGA § 21-2-6. See *Jolley v. Grantham*, 206 Ga. App. 100, 101-102 (424 SE2d 362) (1992).

[3] An elector is a person who possesses "all the qualifications for voting now or hereafter prescribed by the laws of this state, including applicable charter provisions, and shall have registered to vote in accordance with this chapter." OCGA § 21-2-2 (7).

challenges to a specific election thus fit under the heading "election contests," and this Court has taken appellate jurisdiction of this type of election-related case. See *Malone v. Tison*, 248 Ga. 209, 210 (282 SE2d 84) (1981) (pre-election challenge brought before the enactment of OCGA § 21-2-230 by an elector to the right of certain voters to vote in a specific election); *Deverger*, 282 Ga. at 568 (post-election contest under OCGA § 21-2-522 (3) contending that some voters who were not qualified to vote were permitted to cast ballots while other voters who were qualified had their ballots rejected); *Whittington v. Mathis*, 253 Ga. 653, 654 (324 SE2d 727) (1985) (post-election challenge to rejection of legal votes at the polling place). However, a challenge to a voter's qualifications brought under OCGA §§ 21-2-228 or 21-2-229 does not come within our jurisdiction, at least without a clear connection to a specific election. Such a challenge need not be linked to any election, past or future; a voter might become qualified, or disqualified, before the next election occurs, and the board of registrars could change its decision. See OCGA § 21-2-228 (a) (providing that the board of registrars "shall not be limited or estopped by any action previously taken"). Whatever "election contest" means, it must relate to a dispute regarding an "election." Thus, the parties have cited no case in which this Court has decided a challenge to a voter's qualifications brought under OCGA §§ 21-2-228 or 21-2-229, and we have found only one case in which this Court decided an issue regarding an individual voter's eligibility to vote that was not, at least as discussed on the face of the opinion, tied to an election. See *Jarrard v. Clayton County Bd. of Registrars*, 262 Ga. 759 (425 SE2d 874) (1993). No basis for our jurisdiction was mentioned in that opinion, and to the extent that the case was decided as an "election contest," it is hereby overruled.

We need not attempt to further delineate the boundaries of this Court's "election contest" jurisdiction, as the preceding discussion is sufficient to decide this case.

(5) Under this analysis, this appeal of the Board of Registrars' ruling that Cook is not an elector qualified to vote in Randolph County is not a "case[ ] of election contest" within our jurisdiction. No challenge to Cook's right to vote in the November 2, 2010, election was made under OCGA § 21-2-230; instead, the challenge to Cook's right to remain on the list of electors was made by the Board of Registrars under OCGA § 21-2-228, and Cook, in fact, voted in the 2010 election. Likewise, no challenge to the result of that election was made under OCGA § 21-2-522 (3) on the ground that Cook was not qualified to vote. Compare *Deverger*, 282 Ga. at 566. Thus, this case involves only the qualifications of an individual voter, not tied to any particular election. Moreover, any connection between the Board of Registrars'

ruling and Cook's eligibility to vote in future elections is speculative. Cook might change his residence or other qualifications before the next election in which he wishes to vote, and the Board of Registrars may change its ruling for that or other reasons. See OCGA § 21-2-228 (a).

Indeed, Cook does not contend that this case, standing alone, comes within our "election contest" jurisdiction. Instead, he argues that because this case was previously consolidated for trial with the case he filed to preclude the Board of Elections from challenging his qualifications as a candidate in the November 2, 2010, election on the ground he was not a resident of Randolph County, this case is an "election contest." It is true that if Cook were not a resident of Randolph County, he would not be qualified to be a candidate for that county's Board of Education, see OCGA § 20-2-51 (a) ("No person shall be eligible for election as a member of a local board of education who is not a resident of the school district in which that person seeks election and of the election district which such person seeks to represent."); he might thus have been susceptible to a pre-election candidacy challenge under OCGA § 21-2-6.

However, while the trial court ordered that this case be tried together with the separate case involving Cook's school board candidacy, Cook was in fact reelected before any hearing occurred in the candidacy case, no challenge to his qualifications was ever filed by the Board of Elections, and the trial court properly dismissed the candidacy case as moot after the election ended. See *Bray*, 284 Ga. at 642 (holding that a pre-election challenge to a candidate's qualifications becomes moot once the election occurs). Thus, candidacy issues are in no way a part of the current appeal. In fact, the only appellee in this case, the Randolph County Board of Registrars, has no authority to rule on any issue regarding Cook's candidacy for elective office. See OCGA §§ 21-2-210 to 21-2-236.

Furthermore, like its connection to Cook's voting in future elections, the connection of the Board of Registrars' ruling to Cook's candidacy in future elections is speculative. Although Cook and Randolph County entities and officials, as well as opposing candidates, have a litigious history,[4] there may be no such future candidacy

---

[4] See *Cook v. Smith*, 288 Ga. 409 (705 SE2d 847) (2010) (holding that a local act that would have shortened Cook's term as Chairman of the Randolph County Board of Education as previously established by statute was an unconstitutional bill of attainder); *Cook v. Randolph County*, 573 F3d 1143 (11th Cir. 2009) (affirming summary judgment against Cook on an action for damages that Cook, who is black, filed against the Randolph County Board of Registrars after they voted to change his voter registration district from a predominately African-American district to a predominately white district, without obtaining the United States

and, if there is, there may be no challenge to it. If a case of election contest involving Cook does arise in the future, an appeal of it may come to this Court, as occurred in *Jordan v. Cook*. But the mere fact that a party to a case is a candidate for election does not make the case an "election contest" within this Court's jurisdiction. See *State Ethics Commr. v. Moore*, 214 Ga. App. 236 (447 SE2d 687) (1994) (affirming the trial court's reversal of the State Ethics Commission's ruling against a candidate for failing to properly report campaign contributions).

(6) Accordingly, the Board of Registrars' challenge to Cook's residency and his right to remain on the list of electors qualified to vote in Randolph County does not fall within this Court's appellate jurisdiction over "cases of election contest." And the fact that at one point this case was related to Cook's separate action against the Randolph County Board of Elections also does not bring this case within our "election contest" jurisdiction.

(b) *Other Possible Grounds for this Court's Jurisdiction*

Nor does any other basis for this Court's jurisdiction over this appeal appear to exist. The constitutional issues that Cook seeks to raise on the merits were not raised and distinctly ruled on in the trial court and therefore provide no basis for our jurisdiction. See *In the Interest of K. R. S.*, 284 Ga. 853, 853 (672 SE2d 622) (2009). This appeal involves no issue of equity, even if Cook requested equitable relief in the trial court, see *Redfearn v. Huntcliff Homes Assn.*, 271 Ga. 745, 747 (524 SE2d 464) (1999), and his motion for declaratory relief does not give this Court jurisdiction, see *Atlantic States Constr. v. Beavers*, 250 Ga. 828, 828 (301 SE2d 635) (1983). Contrary to Cook's contention, appellate jurisdiction cannot be based simply on "public policy," although if this case is later deemed to be "of gravity or great public importance," this Court may review it by certiorari after the Court of Appeals decides it in the first instance. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. V. Finally, this Court's granting of a discretionary appeal does not necessarily establish that we have jurisdiction, particularly when, as occurred here, the issue of jurisdiction is specifically reserved for the parties and the Court to address in the appeal.

3. For these reasons, we transfer this case to the Court of Appeals. That is the proper appellate court to address the merits of Cook's properly presented claims, as to which we express no opinion.

---

Department of Justice's preclearance of the change under the Voting Rights Act); *Jordan v. Cook*, 277 Ga. at 156-157 (dismissing as moot a challenge brought by an opposing candidate to Cook's qualifications to run for a seat on the Randolph County Board of Education).

We recognize that this process may delay the resolution of this particular appeal, but we hope that our discussion of the scope of this Court's "election contest" jurisdiction will provide guidance for litigants in future cases as to which appellate court their appeals should be directed.

*Transferred to the Court of Appeals. All the Justices concur.*

DECIDED MAY 7, 2012.

*Maurice L. King, Jr.*, for appellant.
*Perry & Walters, Franklin T. Coleman III, Robert K. Raulerson*, for appellee.
*Nancy G. Abudu, M. Laughlin McDonald*, amici curiae.