**SECOND DIVISION
BARNES, P. J.,
DOYLE, P. J. and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/**

**March 18, 2013**

# In the Court of Appeals of Georgia

A12A1946. COOK v. BOARD OF REGISTRARS OF RANDOLPH    DO-011
  COUNTY.

DOYLE, Presiding Judge.

In this discretionary appeal, Henry Cook appeals the trial court's ruling that he is not a resident of Randolph County and therefore not an elector qualified to vote in that county. Because there is an absence of evidence to support a finding that Cook intended to remove his domicile to another jurisdiction, we reverse.

In an earlier proceeding,[1] the Supreme Court of Georgia summarized the procedural history of this case as follows:

---

[1] The application for discretionary review was made to the Supreme Court of Georgia, which granted the application, directing the parties to address its jurisdiction. See *Cook v. Board of Registrars*, 291 Ga. 67 (727 SE2d 478) (2012). Concluding it lacked jurisdiction, the Supreme Court transferred the case to this Court. See id. at 74-75 (3).

On October 25, 2010, after a hearing held pursuant to OCGA § 21-2-228, the Appellee Board of Registrars of Randolph County [the "Board"] ruled that Cook, who was then serving on the Randolph County Board of Education, was not a resident of Randolph County and therefore was not an elector qualified to vote in that county. See OCGA § 21-2-216 (a) (4) (to vote in a primary or general election, a person must be a "resident of this [S]tate and of the county . . . in which he or she seeks to vote"). Appellant appealed that ruling to the superior court, see OCGA § 21-2-228 (f), and filed a motion for an emergency hearing and a motion for stay and/or supersedeas, basing the motions in part on the ground that he had qualified to be on the ballot as a candidate for the School Board at the November 2, 2010, general election. Before the trial court ruled, Cook voted in and won the November 2 election; the following day, the court stayed the Board of Registrars' ruling.

On November 29, 2010, the trial court issued an order directing that this case be tried with a separate case that Cook had filed against the Board of Elections of Randolph County, apparently after he learned that the elections board was contemplating filing a challenge to Cook's qualifications as a candidate for the November 2 election based on the Board of Registrars' ruling. On December 29, 2010, however, the trial court announced that it was dismissing the lawsuit challenging Cook's candidacy as moot because the election had already occurred. The court proceeded only with the hearing on the appeal of the Board of Registrars' decision regarding Cook's qualifications as a voter.

2

The trial court heard extensive evidence from both parties regarding Cook's residency.[2] On April 15, 2011, the court entered an order concluding that Cook was not a resident of Randolph County and therefore was not an elector qualified to vote there.[3]

Cook now appeals that ruling.

"Findings of fact regarding voters' residency shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."[4] Further, we note that

> [w]herever a form of the word "reside" occurs either in the statutes or in the constitution of Georgia with respect to voting, it should be construed to mean "domicile." . . . [So t]he word "reside" here is used in the sense of "domicile." This meaning of residence is consistent with the rules for

---

[2] Cook objected to the trial court's hearing of evidence at the hearing, arguing that the appeal should be confined to the record from the Board of Registrars hearing. Compare OCGA § 21-2-5 (e) (appeals from successful challenges of qualifications of candidates for state and federal office are made before the Superior Court of Fulton County without a jury and confined to the record before the Secretary of State). But Cook does not pursue this argument on appeal, so it is deemed abandoned. See Court of Appeals Rule 25 (c) (2).

[3] (Footnote omitted). *Cook*, 291 Ga. at 67-68 (1).

[4] (Punctuation omitted.) *Holton v. Hollingsworth*, 270 Ga. 591, 594 (5) (514 SE2d 6) (1999).

determining residence in the sense of domicile in the Election Code OCGA § 21-2-217[, which applies in this case].[5]

The determination as to domicile is a mixed question of law and fact normally for the factfinder, but it may become a question of law in plain and palpable cases.[6]

1. Cook contends that the trial court erred by concluding that the Board was authorized to remove him from the list of eligible electors of Randolph County. The genesis of this dispute arose when Cook, a life-long resident of Randolph County and an elected member of the Randolph County Board of Education, bought a house in Dothan, Alabama, after his Randolph County house, located on Howell Mill Road, burned down in October 2008.

There is no dispute that until the fire, Cook was domiciled in Randolph County at the Howell Mill House. At the hearing before the trial court, Cook testified that after his house burned, he stayed at his ailing mother's house until his mother's death in September 2009. In the interim between the house fire and his mother's death, Cook purchased a house across the state line in Dothan, Alabama, in February 2009,

---

[5] (Citations and punctuation omitted.) *Dozier v. Baker*, 283 Ga. 543, 543-544 (1) (661 SE2d 543) (2008).

[6] See id. at 544 (2).

4

and it is apparent that he spent some time there. Cook also testified that he also spent some portion of his time living at a house owned by his sister (or her heirs), located in Randolph County. In April 2009, Cook applied for a homestead exemption at his sister's house, believing that he could claim it as his residence, but it was denied after the county property appraiser visited the property in July and early August of 2009 and found it to be uninhabited.

As evidence that Cook had not resided in Randolph County since the time of the fire, the trial court found that the power company records showed no usage at Cook's sister's house from January to May 2009. Likewise, the city water records indicated no water use at the sister's house from March 2009 to January 2010, when it was switched to the name of Cook's nephew. Cook testified that he allowed his nephew to move into the house while the nephew saved money for his own home. The trial court also noted that Cook failed to produce certain subpoenaed utility or bank records associated with his Dothan property.

Based on the evidence from the hearing, the trial court found that the Board was authorized to remove Cook's name from the list of electors qualified to vote in Randolph County.

OCGA § 21-2-216 (a) (4) provides that no person shall vote in any election unless the person is, inter alia, "[a] resident of this [S]tate and of the county . . . in which he or she seeks to vote." OCGA § 21-2-217 (a) provides the rules for determining residence for purposes of voting.[7] These rules are as follows, in relevant part:

(1) The residence of any person shall be held to be in that place in which such person's habitation is fixed, *without any present intention of removing therefrom*;

(2) A person shall not be considered to have lost such person's residence who leaves such person's home and goes into another state or county or municipality in this [S]tate, for temporary purposes only, *with the intention of returning*, unless such person shall register to vote or perform other acts indicating a desire to change such person's citizenship and residence; . . .

(4) If a person removes to another state *with the intention of making it such person's residence*, such person shall be considered to have lost such person's residence in this [S]tate; . . .

(5) If a person removes to another state *with the intention of remaining there an indefinite time and making such state such person's place of*

<hr/>

[7] This provision also governs the residency determination with respect to a person's qualification to run for elective office. See OCGA § 21-2-217 (a).

6

*residence*, such person shall be considered to have lost such person's residence in this [S]tate, notwithstanding that such person may intend to return at some indefinite future period; . . .

(9) The mere intention to acquire a new residence, without the fact of removal, shall avail nothing; *neither shall the fact of removal without the intention*; . . .

(13) If a person goes into another state and while there exercises the right of a citizen by voting, such person shall be considered to have lost such person's residence in this [S]tate;

(14) The specific address in the county or municipality in which a person has declared a homestead exemption, if a homestead exemption has been claimed, shall be deemed the person's residence address; and

(15) For voter registration purposes, the board of registrars and, for candidacy residency purposes, the Secretary of State, election superintendent, or hearing officer may consider evidence of where the person receives significant mail such as personal bills and any other evidence that indicates where the person resides.

(b) In determining a voter's qualification to register and vote, the registrars to whom such application is made shall consider, *in addition to the applicant's expressed intent*, any relevant circumstances determining the applicant's residence. The registrars taking such registration may consider the applicant's financial independence,

7

business pursuits, employment, income sources, residence for income tax purposes, age, marital status, residence of parents, spouse, and children, if any, leaseholds, sites of personal and real property owned by the applicant, motor vehicle and other personal property registration, and other such factors that the registrars may reasonably deem necessary to determine the qualification of an applicant to vote in a primary or election. The decision of the registrars to whom such application is made shall be presumptive evidence of a person's residence for voting purposes.[8]

In the present case, the trial court found that Cook had removed his habitation to the Dothan house based on the inconsistent evidence about the time he spent habitating in either his mother's or sister's house. Because the trial court was the factfinder and evaluated the live testimony before it, we credit its fact findings and resolve any inconsistencies in favor of the trial court's ruling.

Nevertheless, the trial court's analysis of those facts overlooks the absence of any evidence that Cook intended to remove his domicile from Randolph County to his Dothan property. It is undisputed that Cook spends several days a week in Randolph County working at the industrial supply company he owns and operates there. Cook receives all of his mail at a post office box in Randolph County, and he

---

[8] (Emphasis supplied.)

began this practice years before his house fire because he experienced problems with mail being stolen from the house that burned. Cook regularly attends church in Randolph County (having never attended church in Dothan), he owns a burial plot in Randolph County, he has a Georgia driver's license, and he and has never attempted to vote or apply for a homestead exemption in Alabama. His vehicles are registered in Randolph County and his federal income tax returns show his Randolph County post office box as his address. Cook testified that he considers Randoph County his home and domicile, and whenever he leaves, it is always with the intention of returning. In short, all of the evidence as to Cook's intended domicile points to Randolph County as the locus.

The trial court seemed convinced that Cook's regular habitation at his Dothan property showed that he could not be domiciled where he chose. But "a person may have several residences, [though] only one domicile."[9] In this case, the evidence shows that Cook does have several residences: his mother's, his sister's, and his Dothan property, and he testified that he keeps clothes at both his sister's and his Dothan property. "No definite amount of time spent in a place is essential to make

_____

[9] *Dozier*, 283 Ga. at 545 (2).

9

that place a home,"[10] and here the *only* evidence of Cook's intended home is uniformly in support of a domicile in Randolph County. Under these circumstances, there is no evidence to support a finding that Cook, who lacked a fixed habitation, removed to Dothan with the intention of making it his residence. The statutory factors that must be weighed are replete with references to the person's intent,[11] and the trial court erred by ignoring Cook's stated intent along with the undisputed factual support uniformly corroborating his stated intent.

For example, in *Dozier*,[12] the Supreme Court of Georgia addressed a scenario in which an elected official overtly took numerous steps to change his domicile from his long time home in DeKalb County to Clarke County after a change in the law required him to reside in a particular district (which included Clarke County) to run again for his seat. The Supreme Court explicitly focused not on the candidate's motive for his actions, but his *intention*.[13] The Court affirmed the grant of summary

---

[10] Id. at 545 (2).

[11] See OCGA § 21-2-217 (a) & (b).

[12] *Dozier*, 283 Ga. 543 (construing the domicile requirements of OCGA § 21-2-217).

[13] See id. at 545 (2).

10

judgment in favor of the candidate based on his ownership of real property, driver's license, homestead exemption, vehicle registrations, and voting record. The Court found *no evidence* of his intent to be domiciled in DeKalb County despite "the fact that he still uses and pays expenses for the DeKalb County home," which was transferred to his wife,[14] and that he "spends a majority of time at the DeKalb County house. . . [, and he continues to use] the DeKalb County address for checks and bank statements."[15] Thus, *Dozier* comports with the statutory requirement to focus on the person's intent when evaluating the residency factors:[16] "The mere intention to acquire a new residence, without the fact of removal, shall avail nothing; *neither shall the fact of removal without the intention*."[17]

---

[14] Id. at 544 (2).

[15] Id. at 545 (2).

[16] Without deciding the question, we do not foreclose the possibility that a person could unintentionally abandon their domicile. For example, had Cook voted in an Alabama election, he would be deemed to have lost his residence in Georgia because "[i]f a person goes into another state and while there exercises the right of a citizen by voting, such person shall be considered to have lost such person's residence in this [S]tate." OCGA § 21-2-217 (a) (13). But the facts before us do not support such a conclusion.

[17] (Emphasis supplied.) OCGA § 21-2-217 (a) (9). Cf. *Kean v. Marshall*, 294 Ga. App. 459, 462 (1) (669 SE2d 463) (2008) (in an action to modify child support, holding that domicile may be different from residence, the trial court's focus on

11

There must be either the tacit or the explicit intention to change one's domicile before there is a change of legal residence. If a person leaves the place of his domicile temporarily, or for a particular purpose, and does not take up an actual residence elsewhere *with the avowed intention of making a change in his domicile*, he will not be considered as having changed his domicile.[18]

In Cook's case, his employment, business ownership, driver's license, mail service, voting records, community ties, vehicle registration, nearly daily visits, and tax records all support his stated intent to continue his lifelong domicile in Randolph County. Similar to *Dozier*, Cook's mere ownership[19] and periodic stays at a residence

whether the person was commuting to the domicile was misplaced, and the record was devoid of any evidence showing any action by the person to change his domicile); *Davis v. Holt*, 105 Ga. App. 125, 131 (1) (c) (123 SE2d 686) (1961) (in a case addressing attempted service of an alleged nonresident, finding no factual issue as to domicile even though the person had registered his vehicle in Alabama and held both Alabama and Georgia driver's licenses).

[18] (Citations and punctuation omitted; emphasis in original.) *Haggard v. Graham*, 142 Ga. App. 498, 501 (1) (236 SE2d 92) (1977).

[19] We acknowledge that the residence in *Dozier* had been transferred to the candidate's wife, and Cook actually owned property in Dothan. See *Holton*, 270 Ga. at 594 (5) (electors' intended domicile was supported by the evidence despite the fact that the electors owned a house in a foreign jurisdiction, because the electors "always considered [the disputed jurisdiction] to be their home.").

outside of the county did not support a contrary finding, and in light of the plain and palpable evidence of Cook's intent to remain domiciled in Randolph County, the trial court erred by concluding that the Board was authorized to remove him from the list of electors in Randolph County.

2. Cook's remaining enumerations are moot.

*Judgment reversed. Barnes, P. J. and McMillan, J., concur.*