# Court of Appeals
# of the State of Georgia

ATLANTA,  December 21, 2020

*The Court of Appeals hereby passes the following order:*

**A21A0595. WARREN MATHEW SCHMITZ, JR. et al. v. FULTON COUNTY BOARD OF REGISTRATION AND ELECTIONS**

In July and August 2020, Warren Mathew Schmitz, Jr. and Jeffrey Alan Kunkes ("Appellants") sent notices pursuant to OCGA §§ 21-2-229 and 21-2-230, outlining their intention to challenge the qualifications of 14,346 individuals listed on Fulton County's registered voters list and seeking a hearing on such challenges. The Fulton County Board of Registration and Elections ("Appellee") responded that it would review the list of names, but due to the then-upcoming election cycle, staff availability was limited. Appellee also asserted that federal law, specifically the National Voter Registration Act ("NVRA") and 52 USC § 20507 (d), precluded it from removing voters from the voting rolls in advance of the upcoming elections, so holding a hearing prior to the elections would be futile. Appellee later stated that if Appellants wished to renew their demand after the January 2021 election, it would respond to the list of challenged voters at that time.

After additional correspondence between the parties, on August 13, 2020, Appellants filed a petition for writ of mandamus in the trial court, seeking to compel Appellee: (1) to "set an immediate hearing" on Appellants' voter challenges; (2) provide the statutorily required notice to the challenged voters; and (3) determine the qualifications and right of the challenged votes to cast their votes in Fulton County elections. Appellants argued that Appellee has clear legal duties under OCGA §§ 21-2-229 and 21-2-230 to hold hearings on voter challenges, and in the case of OCGA

1

§ 21-2-230, consider such challenges immediately.

Appellee moved to dismiss Appellants' petition without prejudice, arguing that federal law barred Appellee from removing the challenged voters, and the federal law preempted the Georgia statutes at issue. Even though Appellee could hold an immediate hearing, it would not or could not result in the removal of the challenged voters until after the January 5, 2021 election, and thus it would be futile. Appellee also argued that Appellants had not shown their entitlement to mandamus relief, as Appellants did not have a clear right to the relief requested and had not shown a gross abuse of discretion by a county official.

After a hearing, the transcript of which does not appear in the appellate record, the trial court granted Appellee's motion to dismiss on October 1, 2020. The trial court concluded (1) there is no time limit in OCGA § 21-2-229 by which Appellee was required to conduct a hearing on a voter challenge, and thus Appellee indicating that it would conduct a hearing after the January 2021 election was not an abuse of its discretion; (2) 52 USC § 20507 applied and preempts the Georgia statutes at issue; and (3) forcing Appellee to hold an immediate hearing would constitute an act of futility due to the preemption issue.

On October 5, 2020, Appellants filed their notice of appeal. The appeal was docketed in this Court on November 4, 2020. Appellants did not seek an expedited briefing schedule, and filed their brief on November 24, 2020. Appellee filed its brief on December 15, 2020. On December 17, 2020, Appellants filed a motion to expedite the appeal.

The Supreme Court has exclusive jurisdiction over "[a]ll cases of election contest." Ga. Const. of 1983, Art. VI, Sec. VI, Para. II (2). In *Cook v. Bd. of Registrars of Randolph County*, 291 Ga. 67 (727 SE2d 478) (2012), the Supreme Court provided guidance as to what type of voter registration challenges constitute an election contest and what type do not. Specifically, "a determination of voter qualifications, not clearly linked to a particular election, does not bring an appeal within the Supreme Court's jurisdiction over 'cases of election contest.'" Id. at 67.

2

(citation omitted). However, contests regarding a particular election, including challenges to a voter's right to cast a ballot in a specific election brought under OCGA § 21-2-230, "fit under the heading 'election contests' and [the Supreme] Court has taken appellate jurisdiction of this type of election-related case." Id. at 72 (2) (a) (4). Additionally, the Supreme Court indicated that there may be challenges to a voter's qualification brought under OCGA § 21-2-229, with a "clear connection to a specific election" that would qualify as an election contest. Id.

Here, Appellants' motion to expedite explicitly argues that based on Appellee's failure to comply with its legal duties under Georgia law, individuals who do not reside in the State of Georgia may have voted in the November 3, 2020 election. And, "these individuals remain on Fulton County's voter list and could again cast an improper vote again in the upcoming January 5, 2021 special election." Appellants state that it is imperative that this appeal be resolved and that Appellee reviews the voter challenges prior to the January 2021 special election, as "the integrity and fairness of Fulton County's election results are at stake." These arguments by Appellants create a "clear connection to a specific election," rendering this appeal an election contest that is within the exclusive jurisdiction of the Supreme Court. See *Cook*, 291 Ga. at 72 (2) (a) (4).

Additionally, the relief requested in the trial court and on appeal is based in part on OCGA § 21-2-230. Specifically, Appellants asserted in their mandamus petition that Appellee had a clear legal duty under OCGA § 21-2-230 to immediately consider their voter challenges and determine whether probable cause existed to sustain such challenges. The trial court also found that federal law preempted OCGA § 21-2-230. As discussed above, the Supreme Court has held that challenges brought under OCGA § 21-2-230 "involve[] a pre-election contest regarding a particular election" and "thus fit under the heading 'election contests'" which are within the exclusive jurisdiction of the Supreme Court. *Cook*, 291 Ga. at 71-72 (2) (a) (4). We find this to be another compelling reason to transfer this case to the Supreme Court.

Finally, based on the trial court order, the questions of law at issue in this

3

appeal concern whether federal law, specifically the NVRA and 52 USC § 20507, preempt OCGA §§ 21-2-229 and 21-2-230. "The preemption doctrine is a product of the Supremacy Clause, . . . which invalidates state laws that interfere with, or are contrary to, federal law." *Norfolk Southern R. Co. v. Zeagler*, 293 Ga. 582, 598 (3) (a) (748 SE2d 846) (2013), citing U. S. Const., Art. VI, Cl. 2 (punctuation omitted). We acknowledge that this Court has traditionally "exercised appellate jurisdiction in those cases that do not involve an affirmative claim of preemption—i.e., where preemption is raised as a defense and where that defense does not involve a direct constitutional challenge to an entire statute, ordinance or regulation on preemption ground." *Fox v. Norfolk Southern Corp.*, 342 Ga. App. 38, 43-44 (1) (802 SE2d 319) (2017). However, the question is less certain when the preemption question is central to the trial court's ruling, as it is in the instant case. See *Ward v. McFall*, 277 Ga. 649, 651 (1) (593 SE2d 340) (2004) (Supreme Court exercised jurisdiction over preemption question where trial court order was construed as a declaration that Georgia statute was unconstitutional under the Supremacy Clause).

The question is further complicated where the statutes at issue implicate the right to vote.[1] Based on the arguments made by the parties to the trial court, resolution of this appeal will require a determination of an issue of first impression as to whether OCGA §§ 21-2-229 and 21-2-230 are preempted by the NVRA and specifically 52 USC § 20507. In enacting the NVRA, Congress specifically found that the right of citizens to vote is a fundamental right, and grounded the purpose of the statute in the federal, state, and local governments' duties to promote the exercise of that right. 52 USC 20501 (a). Thus, whether the NVRA preempts Georgia statutes governing challenges to a voter's qualifications naturally implicate a voter's fundamental right to vote, which is grounded in the Fourteenth Amendment of the United States

---

[1] Recognizing the potential constitutional implications of this appeal, Appellants also based their motion to expedite in part on the "impending and imminent uncertainty on the part of citizens with regard to their constitutional rights," notably the fundamental right to vote.

Constitution and the Georgia Constitution of 1983. Cases involving the construction of the Constitution of the State of Georgia or of the United States, particularly novel ones and cases in which the constitutionality of a law or ordinance has been drawn into question, are within the exclusive jurisdiction of the Supreme Court of Georgia. Ga. Const. of 1983, Art. VI, Sec. VI, Par. II (1); *Atlanta Independent School System v. Lane*, 266 Ga. 657, 657 (1) (469 SE2d 22) (1996). Accordingly, we find additional compelling reasons to transfer this case.

As the Supreme Court has the ultimate responsibility for determining appellate jurisdiction, *Saxton v. Coastal Dialysis & Med. Clinic*, 267 Ga. 177, 178 (476 SE2d 587) (1996), this appeal is hereby TRANSFERRED to the Georgia Supreme Court for disposition.



*Court of Appeals of the State of Georgia*
  *Clerk's Office, Atlanta,  12/21/2020*
  *I certify that the above is a true extract from the minutes of the Court of Appeals of Georgia.*
  *Witness my signature and the seal of said court hereto affixed the day and year last above written.*

_____ *, Clerk.*

5